44 A.3d 982

**Daniel A. McNEAL**

v.

**STATE of Maryland.**

**No. 94, Sept. Term, 2011.**

Court of Appeals of Maryland.

May 21, 2012.

Martha Gillespie, Assistant Public Defender (Paul B. De-Wolfe, Public Defender, Baltimore, MD), on brief, for Petitioner.

Robert Taylor, Jr., Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, Baltimore, MD), on brief, for Respondent.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, ADKINS, BARBERA, and McDONALD, JJ.

HARRELL, J.

This case beckons us to examine our opinion in *Price v. State*, 405 Md. 10, 949 A.2d 619 (2008), in which we broke with the majority of jurisdictions nationwide and our own jurisprudence to conclude clearly that legally inconsistent jury verdicts in criminal cases were prohibited henceforth in Maryland. The concurring opinion in *Price* went to some lengths to explain that the scope of the Court's opinion should be read to extend only to legally inconsistent jury verdicts, but not to factually inconsistent jury verdicts. 405 Md. at 35, 949 A.2d at 634 (Harrell, J., concurring). A legally inconsistent verdict is one where the jury acts contrary to the instructions of the trial judge with regard to the proper application of the law. *Id.* Verdicts where a defendant is convicted of one charge, but acquitted of another charge that is an essential element of the first charge, are inconsistent as a matter of law.[1] *Id.* Factually inconsistent verdicts are those where the charges have common facts but distinct legal elements and a jury acquits a defendant of one charge, but convicts him or her on another charge.[2] *Id.* The latter verdicts are illogical, but not illegal. *Id.*

Petitioner, Daniel A. McNeal, was convicted by a jury of possessing a handgun after conviction of a disqualifying crime but, in the same trial, acquitted of wearing, carrying, or transporting a handgun. McNeal urges that the

---

**1.** Expressed another way, legally inconsistent verdicts are those where a defendant is acquitted of a "lesser included" crime embraced within a conviction for a greater offense.

**2.** We note here the State's complaint that our description in *Price* of "factually inconsistent" verdicts is a speculative term of art. The State would have us recant and substitute "confusing" as a more apt phrase. We agree with the basis for this argument, that a court usually cannot understand what formed exactly the basis for an illogical verdict; however, we shall continue to use the term "factually inconsistent" to describe these "illogical" or "curious" jury verdicts in order to maintain consistency between our earlier jurisprudence on this topic and other states that have taken the minority position on this issue. This will facilitate searching the keyword-driven electronic legal research databases.

Court's opinion in *Price* prohibits these factually inconsistent jury verdicts. Rather, we adopt as our holding here the thrust of the concurring opinion in *Price*, that jury verdicts which are illogical or factually inconsistent are permitted in criminal trials for reasons we shall explain.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On 15 October 2008, McNeal was standing on a sidewalk in the 100 block of Poplar Grove Street, in the City of Baltimore, when four police officers approached him.[3] Officer Gold, after observing what he believed to be suspicious behavior by McNeal, asked McNeal if he had "anything he shouldn't have" (i.e., guns, knives, or drugs). McNeal responded forthrightly that he had a gun in his left front pants pocket. Officer Gold removed from McNeal's pocket a 0.9 millimeter Luger, with nine live rounds of ammunition in the magazine. Officer Allen told him that he was under arrest and attempted to place him in handcuffs. McNeal pulled away and ran down Poplar Grove Street. Sergeant Carterbea chased McNeal and used a Taser in an attempt to detain him. McNeal recovered quickly from the "tasing" and resumed the foot race. The officers chased him into a nearby alley, where he was apprehended finally.

McNeal was charged with: 1) unlawful possession of a regulated firearm in violation of Maryland Code (2003, 2008 Supp.) Public Safety Article, § 5–133(b)(1);[4] 2) wearing, carrying, or transporting a handgun in violation of Maryland

---

**3.** At trial, there was conflicting testimony as to whether McNeal was walking or standing and whether he was alone or accompanied by other men at the time.

**4.** Section 5–133(b)(1) of the Public Safety Article states: *"Possession of regulated firearm prohibited.*—A person may not possess a regulated firearm if the person: (1) has been convicted of a disqualifying crime...."* Disqualifying crime means "(1) a crime of violence; (2) a violation classified as a felony in the State; or (3) a violation classified as a misdemeanor in the State that carries a statutory penalty of more than 2 years." Maryland Code (2003, 2008 Supp.) Pub. Safety Art., § 5–101(g). A regulated firearm includes a handgun. Pub. Safety Art., § 5–101(p)(1).

Code (2002, 2012 Repl.Vol., 2008 Supp.), Criminal Law Article, § 4–203;[5] and 3) resisting arrest in violation of Criminal Law Article, § 9–408.[6] At his jury trial in the Circuit Court for Baltimore City in 2009, McNeal explained that he saw the gun laying in a grassy area next to the sidewalk and picked it up to prevent children or other passers-by from recovering the weapon. After collecting the gun and placing it in his pocket, McNeal testified further that he walked for a few blocks before the police confronted him. His trial testimony as to where the gun was located when he picked it up, how far he was from the gun's original location when the police approached him, and whether he was alone or with other people differed from his statements made at a prior motions hearing in the case. The State employed these inconsistencies to impeach McNeal's credibility during cross-examination at trial.

McNeal's explanation for why he had the gun in his pocket was that his intent was to turn in the handgun to the police in order to protect the public and possibly obtain reward money. The parties stipulated to the introduction of a crime lab report that concluded the recovered handgun was operable.[7]

The jury returned a verdict finding McNeal guilty of possessing a regulated firearm after his prior conviction of a disqualifying crime and resisting arrest. The jury, however, concluded that McNeal was not guilty of wearing, carrying, or transporting a handgun. After the verdict was read, but prior

---

**5.** Section 4–203 of the Criminal Law Article provides that, aside from the exceptions enumerated in § 4–203(b), "a person may not: (i) wear, carry, or transport a handgun, whether concealed or open, on or about the person...." Section 4–203(b) provides an exception from the general prohibition for law enforcement officers, permit holders, bona fide collectors, and other groups not applicable here. Md.Code (2002, 2012 Repl.Vol., 2008 Supp.) Crim. Law Art., § 4–203.

**6.** Section 9–408(b)(1) of the Criminal Law Article prohibits a person from resisting intentionally a lawful arrest.

**7.** Recently, in *Moore v. State*, 424 Md. 118, 122, 34 A.3d 513, 515 (2011), this Court concluded that operability of a handgun is not a prerequisite for classification as a "firearm" under Public Safety Article, § 5–101(h).

to the jury's harkening, McNeal objected timely to the alleged inconsistent verdicts and requested the case be sent back to the jury to resolve the inconsistency. The State argued that, under *Price,* only legally inconsistent verdicts were prohibited and the jury verdict in McNeal's case was, at worst, a factually inconsistent one only. The trial judge agreed with the State.

McNeal appealed timely to the Court of Special Appeals. A panel of the intermediate appellate court, in an unreported opinion, vacated the sentence for resisting arrest, but otherwise affirmed the trial court's judgment. The State filed a Motion Requesting Publication of an Unreported Opinion, which the Court of Special Appeals granted. *McNeal v. State,* 200 Md.App. 510, 28 A.3d 88 (2011).

In McNeal's direct appeal, the Court of Special Appeals adopted as its holding the considered dicta from *Tate v. State,* 182 Md.App. 114, 130–31, 957 A.2d 640, 649 (2008), which quoted extensively from the concurring opinion in *Price. McNeal,* 200 Md.App. at 515–16, 28 A.3d at 90–91. The concurring opinion in *Price* concluded that factually inconsistent verdicts were illogical, but not prohibited in the same manner as legally inconsistent verdicts. *Id.* Thus, the intermediate appellate court upheld McNeal's guilty verdict because the inconsistency between an acquittal for wearing, carrying, or transporting a handgun and a conviction for possession of a handgun after prior conviction of a disqualifying crime was based on the jury's conclusions of fact, not of law. *McNeal,* 200 Md.App. at 517–18, 28 A.3d at 92.[8]

McNeal filed timely a petition for a writ of certiorari, which we granted, *McNeal v. State,* 424 Md. 55, 33 A.3d 981 (2011), to consider the question:

> Should this Court's decision in *Price v. State,* 405 Md. 10, 949 A.2d 619 (2008), holding that inconsistent verdicts are no longer allowed in Maryland, apply to verdicts which are

---

8. The Court of Special Appeals considered also questions of evidence suppression, jury instructions, and sentencing, none of which are presented to this Court. *McNeal v. State,* 200 Md.App. 510, 513, 28 A.3d 88, 89 (2011).

factually inconsistent as well as those which are legally inconsistent?

We shall hold that the Court's opinion in *Price* does not apply to jury verdicts in criminal cases that are merely inconsistent factually, illogical, or "curious." In doing so, we preserve the historic role of the jury as the sole fact-finder in criminal jury trials.

## II. DISCUSSION

■ This case presents us with a question of law and, as such, we review the trial court's decision under a non-deferential appellate standard. *Parker v. State*, 408 Md. 428, 437, 970 A.2d 320, 325 (2009).

### A. The *Price* Case

In *Price*, Maryland parted ways with the Supreme Court's long-standing jurisprudence allowing inconsistent jury verdicts. *See United States v. Powell*, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984). In *Price*, Baltimore City police officers, conducting surveillance of an apartment complex where drugs were known to be sold, observed Lawrence Price standing in a breezeway with approximately 15 other persons. *Price*, 405 Md. at 12–13, 949 A.2d at 621. The officers observed the people around Price, but not Price himself, receiving cash and, in return, dispensing small objects. *Price*, 405 Md. at 13, 949 A.2d at 621. After observing these perceived drug transactions, the officers called for back-up and approached the breezeway. *Id.* Everyone fled. *Id.* Price and another man ran to the third floor of an apartment building in the complex and locked themselves inside an apartment. *Id.* Because the man running with Price dropped along their route what the officers thought were drugs, they requested a key from the apartment manager in order to investigate further. *Id.* The officers entered the apartment and arrested Price, who threw to the floor a bag containing a handgun and cash. *Id.*

Price was charged with 18 counts of drug and firearm charges. *Id.* Three of the charges were drug trafficking crimes, including possession with the intent to distribute cocaine, heroin, and marijuana. *Price,* 405 Md. at 14, 949 A.2d at 621. Nine of the charges charged conspiracies with intent to distribute or possess heroin, cocaine, or marijuana. *Id.* Price was charged also with possessing a firearm during and in relation to a drug trafficking crime, possession of a regulated firearm after being convicted previously of a disqualifying crime, and unlawfully carrying or transporting a firearm. *Price,* 405 Md. at 14, 949 A.2d at 621–22. Rounding out the array were charges of simple possession of marijuana, cocaine, and heroin. *Price,* 405 Md. at 14, 949 A.2d at 622. Among the jury instructions given at trial, the judge instructed the jury that it could find Price guilty of possessing a firearm during and in relation to a drug trafficking offense only if it convicted him also of one of the drug trafficking offenses. *Id.*

The jury acquitted Price of the drug trafficking charges and conspiracies. *Price,* 405 Md. at 15, 949 A.2d at 622. Price was acquitted also of the possession of a regulated firearm after conviction for a disqualifying felony and the unlawful wearing, carrying, or transporting of a firearm charges. *Id.* In spite of the trial judge's instruction, however, the jury convicted Price of possession of a firearm during and in relation to a drug trafficking crime. *Id.* Price was convicted also of the simple drug possession charges. *Id.* Price moved to strike the guilty verdicts contending that they were inconsistent impermissibly. *Id.* The trial court, after receiving legal memoranda on the issue from both parties, denied Price's motion because prior cases from this Court and the federal courts allowed inconsistent verdicts generally. *Id.* Price appealed timely to the Court of Special Appeals, which upheld the inconsistent verdicts. *Price,* 405 Md. at 17, 949 A.2d at 623–24.

We approached Price's appeal by accepting the premise that there was theretofore a general rule allowing inconsistent verdicts in Maryland. *Price,* 405 Md. at 18–21, 949 A.2d at 624–26. The Court noted the historic role of the jury in our

judicial system and the various explanations for inconsistent verdicts, including juror lenity, mistake, or compromise. *Price,* 405 Md. at 18–19, 949 A.2d at 624. Judge Eldridge, writing for the Court in *Price,* noted several cases from this Court that upheld inconsistent verdicts. *Price,* 405 Md. at 18–19, 949 A.2d at 624 (citing, among others, *State v. Williams,* 397 Md. 172, 189, 916 A.2d 294, 305 (2007); *Wright v. State,* 307 Md. 552, 576, 515 A.2d 1157, 1169 (1986); *Shell v. State,* 307 Md. 46, 54, 512 A.2d 358, 362 (1986); *Galloway v. State,* 371 Md. 379, 408, 809 A.2d 653, 671 (2002)). The Court observed, however, that there also were recognized exceptions to the general rule when inconsistent verdicts were disallowed, including cases where inconsistent verdicts arose in the context of rulings in a bench trial or a trial where some counts were submitted to the trial judge and some to the jury. *Price,* 405 Md. at 19, 949 A.2d at 624–25 (citing *Williams,* 397 Md. at 189–90, 916 A.2d at 305; *Shell,* 307 Md. at 55, 512 A.2d at 363; *Johnson v. State,* 238 Md. 528, 541–43, 209 A.2d 765, 771–72 (1965)). In addition to cataloging the exceptions, *Price* critiqued that Maryland courts applied inconsistently the general rule, sometimes disallowing some inconsistent verdicts in some criminal trials. 405 Md. at 20, 949 A.2d at 625 (citing, among others, *Shell,* 307 Md. at 55, 512 A.2d at 362; *Johnson,* 238 Md. at 541, 209 A.2d at 771; *Stuckey v. State,* 141 Md.App. 143, 157 n. 3, 784 A.2d 652, 660 n. 3 (2001)).

The discretionary power of the trial court to disallow inconsistent jury verdicts was delved into in *Price,* 405 Md. at 21, 949 A.2d at 626 (citing *Mack v. State,* 300 Md. 583, 599–600, 479 A.2d 1344, 1352 (1984)). Quoting from its opinion in *Mack,* the Court reiterated "it is the duty of a jury to decide a criminal case according to established rules of law, however, the trial court is empowered to set aside the verdict when the jury misapplies the law." *Id.* Inconsistent jury verdicts are contrary to the law, "contrary to the trial court's instructions," and granting of relief "is within the discretion of the trial court." *Id.* The Court was concerned, however, that the holding in *Mack* did not supply criteria to trial judges as to how and when inconsistent verdicts may be accepted. *Id.* The

Court noted also our prior expression of intolerance for inconsistent jury verdicts in civil actions, even though we left open there the question of whether the Court would prohibit inconsistent verdicts in a criminal context. *Price,* 405 Md. at 21, 949 A.2d at 626 (citing *S. Mgmt. Corp. v. Taha,* 378 Md. 461, 467, 836 A.2d 627, 630 (2003)).

Of persuasive force to the Court seemed to be the reasoning supporting another state's common law prohibition of inconsistent jury verdicts in criminal trials, quoting *DeSacia v. State,* 469 P.2d 369, 377 (Alaska 1970), which explained that there is

"no basis to assume . . . that inconsistent verdicts are the product of a jury's disposition toward treating the accused leniently; nor can we see a basis for assuming that, in allowing inconsistent jury verdicts in criminal trials to stand, we run only 'the risk that an occasional conviction may have been the result of compromise.' The truth is simply that we do not know, nor do we have any way of telling how many inconsistent verdicts are attributable to feelings of leniency, to compromise, or, for that matter, to outright confusion on the part of the jury."

*Price,* 405 Md. at 28, 949 A.2d at 630. Based on this reasoning, Maryland's exceptions to the general rule allowing inconsistent verdicts, and the holding in *Taha* that inconsistent verdicts in civil cases were prohibited, the *Price* Court concluded that inconsistent jury verdicts should no longer be permitted in criminal cases. *Price,* 405 Md. at 29, 949 A.2d at 630. Price's conviction for possession of a firearm during and in relation to a drug trafficking crime was reversed. *Price,* 405 Md. at 34, 949 A.2d at 633.[9]

The *Price* concurring opinion urged that the Court's opinion should be read as applying only to legally inconsistent verdicts, but not factually inconsistent verdicts. *Price,* 405 Md. at 35, 949 A.2d at 634 (Harrell, J., concurring). The concurring opinion observed that "[t]he feature distinguishing a

---

**9.** The Court in *Price* addressed also issues of sentencing that are not relevant to the current case.

factually inconsistent verdict from a legally inconsistent verdict is that a factually inconsistent verdict is illogical merely. By contrast, a legally inconsistent verdict occurs where a jury acts contrary to a trial judge's proper instruction regarding the law." *Id.* Concluding that appellate courts are especially "ill equipped to determine whether a jury's verdict is illogical factually, or merely 'curious,'" the concurring opinion urged that Maryland should join New York, Florida, Missouri, and Rhode Island which prohibit legally inconsistent verdicts, but allow factually inconsistent verdicts to stand. *Price,* 405 Md. at 36, 949 A.2d at 635 (Harrell, J., concurring) (citing *People v. Tucker,* 55 N.Y.2d 1, 447 N.Y.S.2d 132, 431 N.E.2d 617 (1981); *Naumowicz v. State,* 562 So.2d 710 (Fla.Dist.Ct.App.1990); *State v. Flemons,* 144 S.W.3d 877 (Mo.Ct.App.2004); *State v. Arroyo,* 844 A.2d 163 (R.I.2004)). The *Price* concurring opinion cautioned also reviewing courts against engaging in an inquiry that may mistake a curious verdict for a legally inconsistent verdict. *Price,* 405 Md. at 36, 949 A.2d at 635 (Harrell, J., concurring).

The concurring opinion explored also the procedure by which a defendant should challenge a legally inconsistent verdict. *Price,* 405 Md. at 40, 949 A.2d at 637 (Harrell, J., concurring). *Id.* Only a defendant, not the State, may object to an inconsistent verdict. *Price,* 405 Md. at 42 n. 10, 949 A.2d at 638 n. 10 (Harrell, J., concurring). The objection must be made prior to verdict finality and discharge of the jury (as McNeal did in the present case), thus preventing the defendant from accepting the inconsistent verdict and seeking thereafter a windfall reversal on appeal. *Price,* 405 Md. at 40, 949 A.2d at 637 (Harrell, J., concurring). Upon proper and timely objection by the defendant, the trial court must instruct the jury to resume deliberations and "resolve the inconsistency either by returning verdict in the defendant's favor, convicting on the implicated counts, or deadlocking on a charge so that no inconsistent finding result." *Price,* 405 Md. at 42, 949 A.2d at 638 (Harrell, J., concurring).

### B. Other States' Approaches to Factually Inconsistent Verdicts

As noted by the concurring opinion in *Price*, several jurisdictions allow factually inconsistent verdicts to stand although, at the same time, prohibit legally inconsistent verdicts. In Florida, legally inconsistent verdicts, where the jury negates an element of one count that is necessary for a conviction of another count, have been prohibited for a long time. *See State v. Connelly*, 748 So.2d 248, 253 (Fla.1999); *Naumowicz*, 562 So.2d at 713; *Streeter v. State*, 416 So.2d 1203, 1206 (Fla.Dist.Ct.App.1982). Inconsistent verdicts based on a jury's interpretation of facts, however, are permissible. *Connelly*, 748 So.2d at 252 (citing *Fayson v. State*, 698 So.2d 825, 826–27 (Fla.1997)). Florida allows these verdicts because they may be the result of jury lenity, rather than a legal determination of a defendant's guilt or innocence. *Id.*

New York takes the approach that verdicts which are "repugnant on the law" are reviewable by appellate courts. *People v. Muhammad*, 17 N.Y.3d 532, 935 N.Y.S.2d 526, 959 N.E.2d 463, 467 (2011) (citing *Tucker*, 447 N.Y.S.2d 132, 431 N.E.2d at 617). Repugnant verdicts are those which are " 'inherently inconsistent when viewed in light of the elements of each crime as charged to the jury' . . . without regard to the accuracy of those instructions." *Muhammad*, 935 N.Y.S.2d 526, 959 N.E.2d at 467 (quoting *Tucker*, 447 N.Y.S.2d 132, 431 N.E.2d at 617). New York allows, however, a jury to exercise leniency and render verdicts that are illogical factually, even in contravention of jury instructions. *Muhammad*, 935 N.Y.S.2d 526, 959 N.E.2d at 467. Noting the difficulties associated with understanding the precise reason behind a factually inconsistent verdict, *Tucker* prohibited consideration by an appellate court of the particular facts in a case and allowed only the elements of the crimes to be used to determine whether a verdict is repugnant. *Muhammad*, 935 N.Y.S.2d 526, 959 N.E.2d at 467 (citing *Tucker*, 447 N.Y.S.2d 132, 431 N.E.2d at 618). Thus, illogical verdicts based on "mistake, compromise or the exercise of mercy by the jury" do not undermine verdicts under New York law. *Muhammad*,

935 N.Y.S.2d 526, 959 N.E.2d at 468 (citing, among others, *People v. Horne*, 97 N.Y.2d 404, 740 N.Y.S.2d 675, 767 N.E.2d 132 (2002)).

Missouri courts consider each count in a criminal indictment separately. *State v. O'Dell*, 684 S.W.2d 453, 465–66 (Mo.Ct. App.1984) (internal citations omitted). Any inconsistency between verdicts on counts are assumed to be a result of possible mistake or compromise, and courts are prohibited from speculating as to the reasons behind the inconsistency. *Id.* Rhode Island exalts the jury's traditional, broad power to compromise as the basis for allowing inconsistent acquittals and convictions. *Arroyo*, 844 A.2d at 170. Massachusetts allows factually inconsistent jury verdicts for reasons of leniency or compromise, but prohibits legally inconsistent verdicts. *Commonwealth v. Gonzalez*, 452 Mass. 142, 892 N.E.2d 255, 262 (2008) (citing *Commonwealth v. Diaz*, 19 Mass.App. Ct. 29, 471 N.E.2d 741 (1984); *Commonwealth v. Walker*, 442 Mass. 185, 812 N.E.2d 262 (2004)). Factually inconsistent verdicts are not allowed, however, in a bench trial, where the only opportunity to exercise lenity occurs during sentencing. *Gonzalez*, 892 N.E.2d at 262–63.

■ Since *Price* was decided, Iowa aligned itself with the states discussed, *supra*. In *State v. Halstead*, 791 N.W.2d 805, 815 (Iowa 2010), Iowa departed from the general rule allowing all inconsistent jury verdicts to stand, but stopped short of opening "Pandora's box by probing into the sanctity of jury deliberations" by limiting review to "compound inconsistencies." Compound inconsistencies occur when a defendant is "convicted of a compound crime [10] and acquitted of the predicate crime in a single proceeding." *Halstead*, 791 N.W.2d at 815.

Alaska, as it turns out, is the sole state to take a position rejecting both factually and legally inconsistent verdicts. *See*

---

10. A compound crime is one that includes as an element another stand-alone crime, or a predicate offense. *United States v. Powell*, 469 U.S. 57, 68, 105 S.Ct. 471, 479, 83 L.Ed.2d 461, 471 (1984).

*DeSacia,* 469 P.2d at 377. In doing so, the Supreme Court of Alaska rejects the possibility that inconsistent verdicts are the product of juror lenity, noting that there is no way for a court to know with certainty whether there was compromise, mistake, or confusion. *Id.* As that reasoning goes, because jurors are required to find guilt beyond a reasonable doubt and judges are required to acquit if there could be no reasonable disagreement based on the facts, the Alaska court concluded that it was compelled to require juries to present reasonable verdicts, i.e., those that are not factually or legally inconsistent. *DeSacia,* 469 P.2d at 378.

## C. The Present Case

McNeal urges that the Court's opinion in *Price* should be read to prohibit factually inconsistent verdicts. He points to *Williams,* 397 Md. at 172, 916 A.2d at 294, for the proposition that factual inconsistencies may provide a basis for reversing a defendant's conviction. McNeal argues also that the holding in *Price* did not limit explicitly its prohibition to legally inconsistent verdicts and relied to some extent on the reasoning in *DeSacia,* which prohibits all inconsistent verdicts. Thus, McNeal rationalizes, factually inconsistent verdicts are swept up into *Price's* holding.

Collateral estoppel principles, set forth in *Ashe v. Swenson,* 397 U.S. 436, 90 S.Ct. 1189, 25 L.Ed.2d 469 (1970), are advanced also by McNeal in support of his position. McNeal hypothecates in that vein that, if he was tried first for the crime of wearing, carrying, or transporting a handgun and acquitted, the acquittal would preclude a subsequent prosecution for possession of a regulated firearm after prior conviction of a disqualifying crime.

The State counters that the illogical verdict implicated here is not an inconsistent verdict as contemplated by *Price* and that there were no inconsistent facts at issue. The jury could have concluded that the weapon was not operable or that McNeal's possession of the handgun was constructive, not actual, which would render the verdicts consistent based on

the elements of each charge, according to the State.[11] The State urges that none of the evils arising from legally inconsistent verdicts, e.g., the impermissible exercise of discretion by the trial judge and misapplied law by a jury, discussed in *Price*, are present with factually inconsistent verdicts. Further, the State points out that the appellate courts are ill-equipped to ferret-out the rationale behind a factually inconsistent jury verdict.

McNeal misinterprets the application of *Williams* to the present case. *Williams*, as we pointed out in *Price*, found objectionable factually inconsistent verdicts rendered by a trial judge at a bench trial. *Williams*, 397 Md. at 189–90, 916 A.2d at 305 ("[I]t is also well settled in Maryland 'that inconsistent verdicts of guilty and not guilty, by a trial judge at a nonjury trial, are not ordinarily permitted.'") (quoting *State v. Anderson*, 320 Md. 17, 29, 575 A.2d 1227, 1233 (1990)). The "take away" message from *Williams* is that only juries, because of their singular role in the judicial system, deserve deference with regard to inconsistent verdicts, which may be the "'product of lenity, mistake, or a compromise to reach unanimity, and that continual correction of such matters would undermine the historic role of the jury as the arbiter of questions put to it.'" 397 Md. at 189, 916 A.2d at 305 (quoting *Galloway*, 371 Md. at 408, 809 A.2d at 671) (internal citation omitted). In *Williams*, the trial judge did not provide a sufficient explanation on the record for the inconsistent verdict. 397 Md. at 190, 916 A.2d at 305. This position was consistent with our previous jurisprudence. It is, however, not applicable to McNeal's jury trial. *See Anderson*, 320 Md. at 29, 575 A.2d at 1233; *Johnson v. State*, 238 Md. 528, 543, 209 A.2d 765, 772 (1965).

The Supreme Court of the United States discussed the principles of collateral estoppel, in the context of inconsistent verdicts, in *Dunn v. United States*, 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932), and *Powell*, 469 U.S. at 64, 105 S.Ct. at

---

11. Inoperability no longer aids the State's assertion here based on our recent holding in *Moore. See supra* note 7.

476, 83 L.Ed.2d at 468. In *Dunn,* the Supreme Court opined that res judicata (actually collateral estoppel) could not be applied to a hypothetical situation where separate nuisance indictments were brought, even on the same underlying facts, if the defendant was acquitted on the first indictment in a separate trial. 284 U.S. at 393, 52 S.Ct. at 190, 76 L.Ed. at 359. The Supreme Court reasoned that an acquittal on one count does not speak to the conclusions of the jury; rather, the acquittals are to be interpreted as "no more than [the jury's] assumption of a power which they had no right to exercise, but to which they were disposed through lenity." *Id.* (internal quotation and citation omitted). In *Powell,* the Supreme Court concluded that *Dunn's* pronouncement on res judicata was incorrect and that collateral estoppel would apply to the separate trials in the nuisance hypothetical. 469 U.S. at 64, 105 S.Ct. at 476, 83 L.Ed.2d at 468 (citing *United States v. Oppenheimer,* 242 U.S. 85, 87, 37 S.Ct. 68, 69, 61 L.Ed. 161, 164 (1916); *Sealfon v. United States,* 332 U.S. 575, 68 S.Ct. 237, 92 L.Ed. 180 (1948)). The *Powell* court, however, did find *Dunn's* reasoning valid otherwise. *Powell,* 469 U.S. at 64, 105 S.Ct. at 476, 83 L.Ed.2d at 468. To the extent that McNeal relies on *Ashe,* his reliance is misplaced in light of the Supreme Court's declination to adopt similar reasoning in *Powell,* a later decided case. In any event, collateral estoppel principles do not dictate the outcome here, as McNeal's charges were tried in a single trial.

Practical considerations of how a trial judge would correct an inconsistent verdict militate against reading the holding of *Price* to apply to factually inconsistent verdicts. The process, other than reversal on appeal, for correcting legally inconsistent verdicts (i.e., allowing the defendant, upon proper and timely objection, to have the trial judge send the verdict back to the jury for further resolution), as applied to factually inconsistent verdicts, would be risky because it may invade the province of the jury with regard to factual determinations. Because of the position of authority the trial judge occupies in the court room, his/her instructions to resolve the factual inconsistency may be construed by the jurors as a suggested

outcome, or that their original conclusions are deemed incorrect. Juries may engage in internal negotiations, compromise, or even make mistakes; however, we cannot divine whether the inconsistency is the product of lenity. We will not risk disturbing a verdict for the wrong reasons. *Powell,* 469 U.S. at 65, 105 S.Ct. at 477, 83 L.Ed.2d at 469 (noting that jury lenity, as explained in *Dunn,* has been recognized by courts and commentators as the "jury's historic function, in criminal trials, as a check against arbitrary or oppressive exercises of power by the Executive Branch").

Today, in adopting the urgings in the *Price* concurring opinion as to factually inconsistent verdicts, we reaffirm the historic role of the jury as the sole fact-finding body in a criminal jury trial. In the case at bar, the jury was instructed properly that they alone had the authority to decide the facts, but must follow the judge's instructions on the law. This Court has long held that a trial judge must not interfere or influence the jury's fact-finding task. *See Butler v. State,* 392 Md. 169, 183–84, 896 A.2d 359, 367–68 (2006) (noting the many ways a trial judge could influence impermissibly the jury's fact-finding mission); *Gore v. State,* 309 Md. 203, 210–11, 522 A.2d 1338, 1341 (1987) (reversing a conviction after a trial court, in its jury instructions, commented on the sufficiency of the evidence in a way that may have influenced the jurors); *Dempsey v. State,* 277 Md. 134, 149, 355 A.2d 455, 463 (1976) (warning that because of their position of authority within the courtroom, trial judges should not comment on the "existence or not of any fact, which should be left to the finding of the jury....").

The verdicts rendered by the jury did not misapply facially the elements of the counts against McNeal. McNeal was convicted of possession of a regulated firearm after prior conviction of a disqualifying crime, but acquitted of wearing, carrying, or transporting a handgun. The charge of possession of a handgun contains legal elements that are distinct from the elements in a wearing, carrying, or transporting a handgun charge. There is no lesser included offense or predicate crime involved in McNeal's inconsistent verdicts.

To evaluate the considerations of the jury in reaching its verdict would involve pure speculation, or require a reviewing court to inquire into the details of the deliberations. This is not a task that courts should undertake. *See Powell,* 469 U.S. at 66, 105 S.Ct. at 477, 83 L.Ed.2d at 470. A reviewing court, distanced from a jury, is equipped to evaluate independently the legal elements of charged crimes and make a determination as to whether the verdicts are compatible with these elements. It can not divine independently, however, the basis for a factually inconsistent verdict. Thus, we must assume that the guilty verdict here is "curious" or factually inconsistent (compared to the acquittal on the other charge), and that what occurs within the minds of the jurors is outside the reach of our appellate grasp. *See Stokes v. State,* 379 Md. 618, 642, 843 A.2d 64, 78 (2004) (refusing to inquire into the mental processes or deliberations of the jurors). We conclude by noting that it may not be in McNeal's best interest to send back a jury's factually inconsistent verdict. As the Supreme Court said, if "it is unclear whose ox has been gored," sending back the verdict may result in convictions on all counts, rather than a full acquittal. *Powell,* 469 U.S. at 65, 105 S.Ct. at 477, 83 L.Ed.2d at 469.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS AFFIRMED. COSTS TO BE PAID BY PETITIONER.**