Circuit Court for Prince George's County
Case No. CT150858X

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 520

September Term, 2016

_____

DAVID DEODATUS NDUNGURU

v.

STATE OF MARYLAND

_____

Graeff,
Kehoe,
Rodowsky, Lawrence F.
 (Senior Judge, Specially Assigned),

JJ.

_____

Opinion by Graeff, J.

_____

Filed:  August 30, 2017

David Deodatus Ndunguru, appellant, was convicted by a jury in the Circuit Court for Prince George's County of robbery, assault in the second degree, and theft of property having a value of less than $100. The court imposed a sentence of ten years' imprisonment, all but three years suspended, for the robbery conviction, to be followed by five years' probation. The court merged the other convictions for sentencing purposes.

On appeal, appellant presents two questions for this Court's review:

1. Did the circuit court err in sustaining the State's objection to appellant's testimony about a police officer's statement of intent?

2. Did the circuit court err in asking the jury to resolve its inconsistent verdict *sua sponte*?

For the reasons set forth below, we shall affirm the judgments of the circuit court.

## FACTUAL AND PROCEDURAL BACKGROUND

On April 25, 2015, members of the Tanzanian community held a party at "Signature Blue," an event venue in Beltsville, Maryland. Among the attendees were Andrew Ngatena and his friend, David Mwimanzi, who had been hired as the "disc jockey" ("DJ") for the party.

During the party, Mr. Ngatena stood near Mr. Mwimanzi so he could observe him at work and learn "how to [DJ] the music." At some point, Mr. Ngatena left "to grab a drink." When he returned, appellant, whom he did not know, was standing near the DJ booth, impeding his path. Mr. Ngatena asked appellant to move, but appellant refused to do so. Mr. Ngatena then decided to go "outside to grab a smoke." Although Mr. Ngatena was unable to recall precisely when he went outside to smoke, he estimated that the time was between 9:00 and 11:00 p.m.

Appellant followed Mr. Ngatena outside. At first, the two men engaged in conversation, but at some point, appellant "took offense" to something that Mr. Ngatena said and punched Mr. Ngatena in the face. Both men began throwing punches at each other. A second unknown man, who was standing behind Mr. Ngatena, then knocked Mr. Ngatena to the ground. A third man, whom Mr. Ngatena also did not know, joined the fight, and the three men kicked Mr. Ngatena repeatedly.

The assailants eventually stopped kicking Mr. Ngatena and began to walk away. At that point, Mr. Ngatena "started throwing the words at them," prompting them to return and resume punching him. By then, Mr. Ngatena was struggling to retain consciousness, but he was able to "sense" that the three assailants began to rifle through his pockets, taking his cell phone, wallet, passport, and gold necklace. Finally, appellant and the two unknown assailants fled.

Shortly after appellant and his accomplices fled, Mr. Mwimanzi was notified that his friend had been beaten and robbed. For the next few hours, Mr. Mwimanzi and others at the party attempted to contact appellant to recover the property taken from Mr. Ngatena and resolve the dispute without police involvement. Mr. Mwimanzi ultimately called the police, and Detective Ben Leach, a member of the Prince George's County Police Department, responded to Signature Blue at approximately 2:46 a.m. on April 26.

Mr. Mwimanzi was acquainted with appellant because the two men had attended several events held by the tightly-knit Tanzanian community, where Mr. Mwimanzi had been a DJ and appellant had performed as a member of a three-man rap ensemble. Mr. Mwimanzi identified appellant to Detective Leach as one of the assailants.

2

Detective Leach obtained a photograph of appellant and showed it to Mr. Ngatena, who identified appellant as the man who robbed him. An arrest warrant was issued for appellant.

Prior to appellant's arrest on June 1, 2015, Mr. Ngatena contacted appellant via Facebook and telephone, attempting to obtain his stolen property. When Detective Leach learned of those attempts at communication with appellant, he advised Mr. Ngatena "not to contact" appellant, and Mr. Ngatena thereafter took that advice. Mr. Ngatena testified that, at one point, appellant called him. Mr. Ngatena's property eventually was given to Mr. Mwimanzi, who returned it to Mr. Ngatena.

Appellant testified that he did not know Mr. Ngatena, did not see him the night of the incident, and he did not assault Mr. Ngatena or take his property. He denied that he ever called Mr. Ngatena.

The jury initially returned an inconsistent verdict, convicting appellant of second-degree assault and robbery but acquitting him of theft. As discussed in more detail, *infra,* the circuit court re-instructed the jury, advising it to continue its deliberations. The jury then convicted appellant of all three charges.

## DISCUSSION

## I.

Appellant contends that the circuit court erred in sustaining the State's objection to his testimony that a police officer told him that they were going to search his cell phone to determine if he called Mr. Ngatena. Appellant concedes that this testimony was hearsay, but he argues that it was admissible pursuant to Maryland Rule 5-803(b)(3), a hearsay

3

exception addressing, among other things, a "statement of the declarant's then existing state of mind, . . . offered to prove the declarant's then existing condition or the declarant's future action." Appellant argues that the "police officer's statement to [a]ppellant – that he or she intended or planned to examine his phone to determine whether he or she had called [Mr.] Ngatena – was admissible to prove that the officer had acted in conformity with that plan." He contends that excluding this testimony prejudiced his defense because testimony regarding the police officer's intent to search his cell phone would have cast doubt on the victim's testimony, as well as bolstered his testimony.

The State argues that this claim is not preserved for this Court's review because appellant failed to proffer below the relevance of the excluded testimony. In any event, it argues that appellant answered the question and the State did not move to strike the testimony from the record, and therefore, appellant suffered no prejudice as a result of the court's ruling.

We begin our analysis by setting forth the relevant factual background. During appellant's testimony, the following colloquy occurred:

> [DEFENSE COUNSEL]: Okay. So is it your testimony that at no time did you assault Mr. Ngatena?
>
> [APPELLANT]: No.
>
> [DEFENSE COUNSEL]: Okay. And did you at any time take possession of any of his property?
>
> [APPELLANT]: No.
>
> [DEFENSE COUNSEL]: Okay. And at any time have you assisted or been asked to assist in the return retrieval of his property?

4

[APPELLANT]:  No.

[DEFENSE COUNSEL]:  Did you ever call him?

[APPELLANT]:  No.

[DEFENSE COUNSEL]:  And you spoke with the police.  Correct?

[APPELLANT]:  Yeah, after they came to arrest me.

[DEFENSE COUNSEL]:  Okay.  And you actually made a statement at the police station?

[APPELLANT]:  I -- when they came at my house to arrest me, they didn't tell me why they are arresting me.  So, when we got to the police station, that's when they told me I'm arrested because I assaulted somebody.

[DEFENSE COUNSEL]:  Okay.  Did you offer your phone to them?

[APPELLANT]:  Yeah.  I gave them my phone.

[DEFENSE COUNSEL]:  **Did they -- did anybody tell you they were going to search your phone to find out if you had called this person?**

[APPELLANT]:  **Yeah.**

[THE STATE]:  **Objection, Your Honor.**

THE COURT:  **Sustained.**

[DEFENSE COUNSEL]:  Did they take your phone?

[APPELLANT]:  Yeah.

[DEFENSE COUNSEL]:  Did they give it back at some point?

[APPELLANT]:  Yeah.

[DEFENSE COUNSEL]:  No further questions, Your Honor.

(emphasis added).

5

As the State points out, when the prosecutor objected to appellant's testimony, and the court sustained that objection, appellant did not proffer the basis for the admissibility of the excluded testimony. At no time did appellant argue, as he does on appeal, that the testimony was admissible pursuant to Rule 5-803(b)(3).

"Ordinarily, a formal proffer of the contents and relevancy of the excluded evidence must be made in order to preserve for review the propriety of the trial court's decision to exclude the subject evidence." *Merzbacher v. State*, 346 Md. 391, 416 (1997). *Accord Mack v. State*, 300 Md. 583, 603 (1984), *abrogated on other grounds*, *Price v. State*, 405 Md. 10 (2008). When "evidence is inadmissible on its face and admissible only for a limited purpose or under some theory, the proponent must . . . explain to the court how the evidence is admissible and why it should be received." *Randall v. State*, 223 Md. App. 519, 557 (2015) (quoting *In re Adoption/Guardianship Nos. CAA92-10852 and CAA92-10853*, 103 Md. App. 1, 33 (1994)). *Accord* 5 Lynn McLain, *Maryland Evidence, State and Federal*, § 103:20 (May 2017) ("On appeal, the proponent cannot argue either that the evidence was admissible as nonhearsay or falls within a particular hearsay exception, unless the proponent made that particular argument below.").

Here, as indicated, appellant failed to explain why the excluded testimony was admissible. Accordingly, this contention is not preserved for this Court's review, and we decline to address it.

## II.

Appellant's second contention is based on the jury verdicts. On the second day of trial, the jury returned its initial verdicts, finding appellant guilty of assault in the second

6

degree and robbery, but not guilty of theft.  Defense counsel then requested the court to poll the jury.  Prior to the conclusion of the polling, however, the circuit court interrupted the proceedings and convened a bench conference, where the following occurred:

> THE COURT:  How can it legally be guilty of robbery and not guilty of theft?
>
> [DEFENSE COUNSEL]:  I'm waiting on that answer.  It's inconsistent.
>
> THE COURT:  Okay?  So, we can accept that factual inconsistent verdict, but I don't think factually there is anything here.
>
> This is a legally inconsistent verdict.  Right?
>
> [THE STATE]:  Right.
>
> THE COURT:  So, I'm inclined to tell them that it can't be.  That's if it's guilty of robbery he must be guilty of theft.
>
> [DEFENSE COUNSEL]:  Of course my position is he is not guilty [of] theft.  He is not guilty.
>
> THE COURT:  He must be -- he must be not guilty of robbery?
>
> [DEFENSE COUNSEL]:  Right.
>
> THE COURT:  So, I will have them go back and continue their deliberation to reach a consistent verdict.
>
> [DEFENSE COUNSEL]:  I guess, for the record, again I would proffer that he has been acquitted of the theft.  Therefore he must legally be acquitted of the robbery, and that leaves us --
>
> THE COURT:  He's not acquitted or convicted of anything yet, because we haven't accepted the verdict.  So noted.
>
> [DEFENSE COUNSEL]:  Thank you, Judge.
>
> THE COURT:  Okay.

The circuit court then advised the jury that the verdicts it had reached, finding appellant guilty of robbery but not guilty of theft, were inconsistent, explaining that theft was part of robbery, i.e., robbery is a theft by force or threat of force. The court instructed the jury:

> [Y]ou can't have found him not guilty of theft but guilty of robbery. If he is guilty of robbery, he is also guilty of theft.
>
> If he is not guilty of theft, he . . . must be not guilty of robbery. Okay?
>
> So, what I'm going to do is ask you to go back to the jury room and continue your deliberations and come up with a consistent verdict.

Fifteen minutes later, the jury came back with its verdict. It found appellant guilty of all charges: assault in the second degree, robbery, and theft. The jury was then polled and the verdict hearkened.

Appellant contends that the circuit court erred in *sua sponte* ordering the jury to reconsider its inconsistent verdict. He asserts that only the defendant can object to an inconsistent verdict, and because he did not do so, the proper remedy is to vacate the theft conviction.

The State contends that this claim is not preserved for this Court's review because appellant's "requested relief below was different [from] what he now argues on appeal." Moreover, the State argues that the circuit court did not err in instructing the jury to resume its deliberations to resolve the inconsistent verdict because appellant did object to the inconsistency, and by asking the trial court to enter an acquittal as to the theft count, counsel was "signaling to the court that he wanted the jury to continue deliberating in the hopes that the inconsistency would be resolved in his favor."

8

Until relatively recently, inconsistent verdicts of conviction and acquittal by a jury in a criminal case were permitted because the inconsistency could be the result of lenity. *Travis v. State*, 218 Md. App. 410, 446 (2014). In 2008, however, the Court of Appeals held that inconsistent verdicts would no longer be permitted in Maryland. *Price*, 405 Md. at 29. The concurring opinion written by Judge Harrell stated that the majority opinion applied only to "legally inconsistent verdicts," not "factually inconsistent" verdicts. *Id.* at 35 (Harrell, J., concurring). The Court of Appeals subsequently confirmed this assertion, holding that, although legally inconsistent verdicts are no longer permissible, jury verdicts that are illogical or factually inconsistent are permitted in criminal trials. *McNeal v. State*, 426 Md. 455, 465-66 (2012). *Accord Givens v. State*, 449 Md. 433, 457-58 (2016).

The Court of Appeals has explained that factually inconsistent verdicts occur "'where a jury renders different verdicts on crimes with distinct elements when there was only one set of proof at a given trial, which makes the verdict[s] illogical.'" *Givens*, 449 Md. at 454 (quoting *Price*, 405 Md. at 35 (Harrell, J., concurring)). Legally inconsistent verdicts, on the other hand, occur "where a jury acts contrary to a trial [court]'s proper instructions regarding the law." *Id.* (quoting *Price*, 405 Md. at 35 (Harrell, J., concurring)). Stated differently,

> "[a] legal inconsistency . . . occurs when an acquittal on one charge is conclusive as to an element which is necessary to[,] and inherent in[,] a charge on which a conviction has occurred. . . . [I]f the essential elements of the counts of which the defendant is acquitted are identical and necessary to prove the count of which the defendant is convicted, then the verdicts are inconsistent. Verdicts of guilty of crime A but not guilty of crime B, where both crimes arise out of the same set of facts, are legally inconsistent when they necessarily involve the conclusion that the same essential element or elements of each crime were found both to exist and not to exist."

9

*Id.* at 455 (quoting *Price*, 405 Md. at 37-38 (Harrell, J., concurring)).

Here, there is no dispute that the initial verdict, finding appellant not guilty of theft of property with a value less than $100 but guilty of robbery, was legally inconsistent. An essential element of both offenses was the taking of property, and if appellant was not guilty of taking the property, he could not legally be guilty of robbery. *See Rudder v. State*, 181 Md. App. 426, 467 (2008) ("Theft is a lesser included offense within the greater inclusive offense of robbery, for robbery is, by definition, a theft from the person accomplished by force or threat of force."). *Accord Smith v. State*, 412 Md. 150, 166 (2009) ("misdemeanor theft is a lesser included offense of robbery").[1]

As the circuit court noted, however, at the point that these initial inconsistent verdicts were announced, they had not been accepted by the court, and therefore, the jury verdicts were not final. *See Givens*, 449 Md. at 478 ("[A] jury's verdict is final when the trial court accepts the verdict after the jury has hearkened to the verdict and/or been polled."). Thus, defense counsel's statement below, that appellant was entitled to an

---

[1] We note that, in the situation where a defendant is charged with felony theft, which was not the case here, the value of the property stolen is an element of the offense. *Counts v. State*, 444 Md. 52, 64 (2015). In that situation, theft is not a lesser included offense of robbery because each offense contains an element that the other does not, i.e., felony theft requires proof of a taking of property in excess of a certain value and robbery requires proof of a use of force. *See Jackson v. State*, 141 Md. App. 175, 197 (felony theft and robbery do not merge under the required evidence test, but the rule of lenity required merging the sentence for felony theft because both convictions "were predicated on the taking of the same property from the same victim in a single incident"), *cert. denied*, 368 Md. 240 (2001). As indicated, appellant was convicted, not of felony theft, but of theft of property with a value less than $100, and therefore, it was a lesser included offense of robbery.

10

acquittal at that point, was incorrect, as appellant concedes on appeal. *Id.* at 479 ("[D]ouble

jeopardy . . . 'prevents further deliberations on an acquittal only after [the] verdict is

final.'") (quoting *Price*, 405 Md. at 42 n.11).

The question, thus, is what was the proper course of action for the trial court to take,

and specifically, did the circuit court err in *sua sponte* advising the jury to reconsider the

inconsistent verdict?[2]  As explained below, we answer that second question in the

affirmative and hold that a trial court may not, in the absence of a request from the

defendant, advise a jury that its verdicts are inconsistent and send the jury back to resolve

the inconsistency.

In *McNeal*, the Court of Appeals stated:

> The discretionary power of the trial court to disallow inconsistent jury
> verdicts was delved into in *Price*, 405 Md. at 21, 949 A.2d at 626 (citing
> *Mack v. State*, 300 Md. 583, 599-600, 479 A.2d 1344, 1352 (1984)).  Quoting
> from its opinion in *Mack*, the Court reiterated "it is the duty of a jury to decide
> a criminal case according to established rules of law, however, the trial court
> is empowered to set aside the verdict when the jury misapplies the law."  *Id.*
> Inconsistent jury verdicts are contrary to the law, "contrary to the trial court's
> instructions," and granting of relief "is within the discretion of the trial
> court."  *Id.*

426 Md. at 464.  Similarly, this Court has stated

> "It is a generally accepted rule that if the jury should return a verdict which
> is defective in form or substance, it should not be accepted by the trial judge.
> It is essential for the prompt and efficient administration of justice to prevent
> defective verdicts from being entered upon the records of the court as well
> as to ascertain the real intention of the jury in their finding. Where a verdict
> is ambiguous, inconsistent, unresponsive, or otherwise defective, it is the
> duty of the trial judge to call the jury's attention to the defect and to direct

---

[2] Defense counsel did not, as the State suggests, "signal" to the court that counsel
wanted the court to instruct the jury to continue deliberating to resolve the inconsistency.
As discussed, *infra*, however, he did fail to object to the court's stated intention to do so.

them to put the verdict in proper form either in the presence of the court or by returning to their consultation room for the purpose of further deliberation."

*Bates v. State*, 127 Md. App. 678, 699 (quoting *Jenkins v. State*, 59 Md. App. 612, 621 (1984)), *cert. denied*, 356 Md. 635 (1999), *overruled on other grounds*, *Tate v. State*, 176 Md. App. 365 (2007).

In *Givens*, however, Judge Watts, writing for the majority of the Court of Appeals, stated that the "choice of whether to object to inconsistent verdicts belongs to the defendant alone," and "the trial court may not, *sua sponte*, send the jury back to resolve the inconsistency." 499 Md. at 476.[3]  The Court explained why a criminal defendant might want to object when a jury returns an inconsistent verdict:

> A defendant has not only an opportunity, but in some cases an incentive, to object to inconsistent verdicts before the verdicts become final. Where a guilty verdict is inconsistent with a not-guilty verdict, the defendant might raise such an issue with the expectation that the trial court will send the jury back to resolve the inconsistency, and in hopes that the jury may find the defendant not guilty of both charges.

*Givens*, 449 Md. at 475.  Sending inconsistent verdicts back to the jury, however, amounts to another "roll [of] the dice, double or nothing." *Tate v. State*, 182 Md. App. 114, 134, *cert. denied*, 406 Md. 747 (2008).  Thus,

> [q]uite often[,] a defendant's optimal choice will be to remain silent, thus waiving his [or her] challenge to the inconsistent verdicts and accepting the conviction that may be inconsistent.  A defendant, aware of his or her guilt, or the overwhelming evidence of guilt, of all of the crimes of which he or she stands charged, may choose to accept the jury's lenity.  A defendant may be

---

[3] The dissenting opinion, written by Judge Greene, and joined by Judges Adkins and Battaglia, however, was of the view that a trial judge not only can address an inconsistent verdict *sua sponte*, but he or she "has a duty to remedy the problem with regard to inconsistent verdicts." *Givens v. State*, 449 Md. 433, 493 (2016) (Greene, J., dissenting).

> wise to accept the inconsistent conviction and accompanying sentence, rather than look a gift horse in the mouth. If the defendant objects to the inconsistent verdicts, the jury, given a second chance, may choose to remedy the error in a manner [that is] not in the defendant's favor.

*Givens*, 449 Md. at 475-76 (quoting *Price*, 405 Md. at 40 n.9 (Harrell, J., concurring)).

To be sure, the issue presented in *Givens* was different. In that case, the circuit court accepted the inconsistent verdicts, and the Court of Appeals held that the defendant could not challenge those verdicts on appeal where he failed to object before the verdicts became final. *Id.* Given the Court's specific statement that the trial court may not, without a request from the defense, "*sua sponte*, send the jury back to resolve the inconsistency," *id.* at 476, however, we conclude that the circuit court erred in *sua sponte* sending the jury back to resolve the inconsistency in its initial verdicts.

That, however, is not the end of the inquiry. We still must address whether, based on the arguments made below, appellant is entitled to relief on appeal.

When the circuit court questioned how the verdicts initially reached were consistent, defense counsel agreed that the verdicts were inconsistent. He did not, however, object to the verdict or request the court to send the jury back to resolve the inconsistency. Rather, counsel requested an acquittal on the theft charge, which appellant now agrees was not warranted. When the court rejected that request and stated its intent to advise the jury to continue deliberating to reach a consistent verdict, defense counsel did not object.

In *Givens*, the Court of Appeals held that Givens "waived any issue as to allegedly inconsistent verdicts by failing to object before the verdicts bec[a]me final and the circuit court discharged the jury." *Id.* at 486. It held that, "to preserve for review any issue as to

13

allegedly inconsistent verdicts, a defendant in a criminal trial by jury must object . . . before the verdicts are final and the trial court discharges the jury." *Id.* at 486.

Again, we recognize that the issue presented in *Givens* was different. We conclude, however, that the same analysis applies here. For the same reason that an appellant who does not object to an inconsistent verdict is not entitled to appellate relief, a defendant who fails to object when the trial judge *sua sponte* instructs a jury to continue deliberating to reach a consistent verdict is not entitled to appellate relief. As Judge Watts explained in *Givens*, "one of the purposes of the requirement that a defendant preserve issues for review is to give a trial court the opportunity to correct any error in the proceedings." *Id.* at 473. *Accord Peterson v. State*, 444 Md. 105, 126 (2015) ("'Fairness and the orderly administration of justice is advanced by requiring counsel to bring the position of their client to the attention of the lower court at the trial so that the trial court can pass upon, and possibly correct any errors in the proceedings.'") (quoting *Robinson v. State*, 410 Md. 91, 103 (2009)). If appellant had presented to the circuit court the argument he makes on appeal, the court may have decided not to advise the jury, over defense counsel's objection, to reconsider its verdicts.

In this case, the court made clear its intent to resolve what everyone agreed were legally inconsistent verdicts by instructing the jury to continue to deliberate to reach a consistent verdict. At no time did defense counsel object or express disagreement with this intended action. He merely stated: "Thank you, Judge." Under these circumstances, appellant's contention on appeal that the court erred in *sua sponte* advising the jury to reconsider its verdicts is not preserved, and he is not entitled to relief on this ground. *See*

14

*Gilliam v. State*, 331 Md. 651, 691 (1993) ("As [defendant] did not object to the course of action . . . taken by the court, and apparently indicated his agreement with it, he cannot now be heard to complain that the court's action was wrong."), *cert. denied*, 510 U.S. 1077 (1994); *Watkins v. State*, 328 Md. 95, 99-100 (1992) (where party acquiesces in court's ruling, there is no basis for appeal of that ruling), *overruled on other grounds*, *Calloway v. State*, 414 Md. 616 (2010). *See also Tate*, 182 Md. App. at 135 ("The defendant may not stand mute and later complain about the verdicts he did nothing to cure at the only time a cure was still possible.").[4] Accordingly, we decline to vacate appellant's conviction for theft.

**JUDGMENTS OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY AFFIRMED. COSTS TO BE PAID BY APPELLANT.**

---

[4] Appellant did not ask this Court to review the circuit court's decision for plain error, and he gave no reason why he did not object to the court's instruction to the jury. *Cf. Givens*, 449 Md. at 481-82 (declining to engage in plain error review where Givens did not request it and did not argue that the failure to raise the argument that the verdicts were inconsistent was not a matter of trial tactics).