*Rodney Pitts v. State of Maryland,* No. 0552 of the September, 2020 Term, Opinion by Moylan, J.

**HEADNOTE:**

**MARYLAND RULE 4-345(A) AND INCONSISTENT JURY VERDICTS – A LONG, LONG TRAIL A-WINDING – TWO CONTENTIONS – WHAT IS AN INHERENTLY ILLEGAL SENTENCE? – VARIETIES OF INCONSISTENT VERDICTS – LEGAL INCONSISTENCY VERSUS FACTUAL INCONSISTENCY – A STICKY WICKET: VERDICT INCONSISTENCIES AND INHERENT ILLEGALITIES – <u>PRICE V. STATE</u>: A 180° CHANGE OF COURSE – <u>HEINZE V. STATE</u>: A FALSE LIGHT ON THE SHORE – THE CASELAW PRE-<u>PRICE</u>: INCONSISTENT VERDICTS BY A JURY WERE TOLERATED – THE CASELAW POST-<u>PRICE</u>: <u>PRICE</u> CHANGED THE LAW – TIME IS OF THE ESSENCE – AN ALTERNATIVE HOLDING: THE ROAD TO <u>GIVENS</u> – THE <u>PRICE-GIVENS</u> SINGULARITY – A FORLORN CONTENTION – THE LACK OF SUBSTANTIVE MERIT – THE LACK OF PRESERVATION – THE LACK OF ANY PERSUASIVE REASON FOR NOTICING "PLAIN ERROR" – THE LACK OF ANY INHERENT ILLEGALITY IN THE SENTENCE**

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 0552

September Term, 2020

RODNEY PITTS

v.

STATE OF MARYLAND

Fader, C.J.,
Ripken,
Moylan, Charles E., Jr.
  (Senior Judge, Specially Assigned),

JJ.

Opinion by Moylan, J.

Filed: April 29, 2021

 Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document is authentic.



Suzanne C. Johnson, Clerk

The fields of law involved in this appeal are two-fold, each highly complicated in its own right, and intricately interwoven in the case before us. One of them is Maryland Rule of Procedure 4-345(a), which provides, "The court may correct an illegal sentence at any time." The other is the curious phenomenon of inconsistent jury verdicts. Involved is the interwoven and subtly nuanced issue of which, if any, of the many varieties of verdict inconsistency might produce an "illegal sentence" within the strict contemplation of Rule 4-345(a).

## A Long, Long Trail A-Winding

The appellant, Rodney Pitts, was charged with the cold-blooded murders of two sisters, G'Angela Johnson and Trina Johnson, that occurred on December 21, 1995 in Baltimore City. Following a trial that ran from September 23 through October 3, 1997, the jury, presided over by Judge Joseph McCurdy, rendered its verdicts. With respect to each of his two victims the appellant had been charged with the Intent-to-Kill variety of murder. The three other varieties or kinds of murder, 1) Intent-to-Inflict Grievous Bodily Harm Murder, 2) Felony Murder, and 3) Depraved Heart Murder, are not at all involved in this case. With respect to each victim, the appellant was charged with 1) Premeditated Intent-to-Kill Murder in the first degree and 2) Simple Intent-to-Kill Murder in the second degree.[1] The second-degree murder count was, <u>inter alia</u>, a lesser included offense within

---

[1]    It is tempting to call second-degree murder of this type "unpremeditated murder," but that would not be literally correct. Non-premeditation is not an affirmative element of the second-degree crime. What is involved in proving the lesser-degree of murder is not proof of non-premeditation but only the non-proof of premeditation. There is a big difference between the two.

the first-degree murder count, indistinguishable from the greater inclusive offense except that it lacked the aggravating element of premeditation.

As it rendered its verdicts, victim by victim and count by count, the jury found the appellant guilty of murder in the first degree with respect to both G'Angela and Trina. It also found the appellant guilty of murder in the second degree as to Trina, but, bizarrely, not guilty of murder in the second degree as to G'Angela.[2] This inexplicable incongruity now looms before us 24 years later.[3]

Judge McCurdy sentenced the appellant to a term of life imprisonment without the possibility of parole for the first-degree murder of G'Angela Johnson. The appellant does not now challenge his conviction or sentence for the first-degree murder of Trina Johnson. In the immediate wake of the sentences, the appellant appealed both convictions to this Court. We affirmed in an unreported opinion filed on December 7, 1998, simply vacating

---

[2]    There is no conceivable, let alone logical, explanation for this weird and aberrant not guilty verdict other than the overwhelming probability that the jury foreperson inadvertently misspoke or that the clerk inadvertently misheard or misrecorded what was said. As was noted by Alexander M. Bickel, Comment, "Judge and Jury – Inconsistent Verdicts in the Federal Courts," 63 Harv. L. Rev. 649, 653 (1950):

> The possibility of inconsistent verdicts increases in direct ratio to the number of counts.

[3]    One of the recent benefits of Givens v. State, 449 Md. 433, 144 A.3d 717 (2016) is that such incongruities may not lie unnoticed at the time but then loom up, as here, decades later. For an apparently inconsistent verdict to be worthy of later appellate notice, defense counsel must bring it to the attention of the trial judge before the jury has been discharged. This provides the opportunity for the court to send the jury back to clarify an apparent inconsistency.

one of two redundant convictions for openly carrying a dangerous weapon. The Court of Appeals denied the appellant's request for a writ of certiorari on March 12, 1999.

The appellant's Motion to Correct an Illegal Sentence was filed in the Circuit Court for Baltimore City 19 years later on November 4, 2018. A telephonic hearing was held before Judge Pamela J. White on July 2, 2020. In a Memorandum Opinion and Order filed on July 7, 2020, Judge White denied the motion and this appeal followed.

## Two Contentions

On this appeal, the appellant raises two contentions. In the appellant's express terms, they are:

1. **MR. PITTS' SENTENCE IS INHERENTLY ILLEGAL BECAUSE IT ARISES FROM A LEGALLY INCONSISTENT VERDICT, AND**

2. **THE COURT'S FAILURE TO INSTRUCT THE JURY THAT SECOND-DEGREE MURDER IS A LESSER-INCLUDED OFFENSE OF FIRST-DEGREE MURDER IS REVERSIBLE ERROR.**

## What Is An Inherently Illegal Sentence?

The appellant claimed that his sentence for the first-degree murder conviction of G'Angela Johnson was an "illegal sentence." The appreciation of what is an "illegal sentence" within the strictly limited coverage of Rule 4-345(a) is an appropriate place to begin our analysis. In Carlini v. State, 215 Md. App. 415, 419-20, 81 A.3d 560 (2013), this Court examined that nuanced definition:

> What is an illegal sentence? That all depends upon what one means by "an illegal sentence." There are countless illegal sentences in the simple sense. They are sentences that may readily be reversed, vacated, corrected or modified on direct appeal, or even on limited post-conviction review, for a wide variety of procedural glitches and missteps in the sentencing process. Challenges to such venial illegalities, however, are vulnerable to such common pleading infirmities as non-

3

preservation and limitations. There is a point, after all, beyond which we decline to revisit modest infractions. There are, by contrast, <u>illegal sentences in the pluperfect sense</u>. Such illegal sentences are subject to open-ended collateral review. Although both phenomena may casually be referred to as illegal sentences, there is a critically dispositive difference between a procedurally illegal sentencing process and an inherently illegal sentence itself. <u>It is only the latter that is grist for the mill of Maryland Rule 4-345(a).</u>

(Emphasis supplied.)

Rule 4-345(a) focuses narrowly on the sentence itself. It is not a broadscale review of the antecedent trial procedure culminating in the sentence. The evolving caselaw has drawn a dispositive distinction between illegal sentences in the sense that the antecedent procedure was somehow legally flawed, which are not cognizable under Rule 4-345(a), and illegal sentences in the more limited cases where the illegality is inherent in the sentence itself, which are cognizable. The Court of Appeals, in <u>Tshiwala v. State</u>, 424 Md. 612, 619, 37 A.3d 308 (2012), was emphatic that some illegal sentences are not covered by Rule 4-345(a):

> Where the sentence imposed is not inherently illegal, and where the matter complained of is a procedural error, the complaint does not concern an illegal sentence for purposes of Rule 4-345(a). <u>A sentence does not become an illegal sentence because of some arguable procedural flaw in the sentencing procedure.</u>

(Emphasis supplied.) *See also* <u>Johnson v. State</u>, 427 Md. 356, 367, 47 A.3d 1002 (2012) ("The scope of this privilege…is narrow. To constitute an illegal sentence under Rule 4-345(a), the illegality must inhere in the sentence itself, rather than stem from trial court error during the sentencing proceeding. Accordingly, we have denied relief pursuant to Rule 4-345(a) because the sentences imposed were not inherently illegal, despite some form of error or alleged injustice.").

4

This Court examined the same distinction in Matthews v. State, 197 Md. App. 365, 375, 13 A.3d 834 (2011), rev'd on other grounds, 424 Md. 503, 36 A.3d 499 (2012):

> Emerging from a survey of a quarter of a century of Maryland caselaw is the overarching principle that the values of finality and closure still abide, Rule 4-345(a) has been consistently interpreted to be a narrow window that permits a trial judge to correct at any time a sentence that is obviously and facially illegal in the sense that it is a sentence that the court had never been statutorily authorized to impose. It is not, on the other hand, some unlimited "Reopen, Sesame," licensing the court to revisit and to relitigate issues that have long since become faits accompli.

(Emphasis supplied.) *See also* Ray v. State, 230 Md. App. 157, 162-63, 146 A.3d 1157 (2016).

As this Court warned in Ray v. State, 230 Md. App. at 167, "To recite that for Rule 4-345(a) applicability, the illegality must inhere in the sentence itself is one thing. Instinctively to be able to identify such a phenomenon is something else again." An obvious example of an inherently illegal sentence is a sentence that exceeds the sentencing cap. (An 11-year sentence for a crime carrying a statutory maximum sentence of 10 years). A recent prolific expansion of this type of inherent illegality are sentences exceeding a sentencing cap imposed not by statute but by a negotiated plea bargain. Cuffley v. State, 416 Md. 568, 7 A.3d 557 (2010). Another type of inherently illegal sentence is one where the sanction imposed is one that has not been authorized by statute, such as restitution, Walczak v. State, 302 Md. 422, 488 A.2d 949 (1985) or home detention, Holmes v. State, 362 Md. 190, 763 A.2d 737 (2000).

Another type of inherent illegality and the one pertinent to the case before us is a sentence that is illegal because it was imposed in a case where no sentence should have

5

been imposed in the first place. <u>Alston v. State</u>, 425 Md. 326, 339, 40 A.3d 1028 (2012), spoke of this type of inherently illegal sentence:

> There is <u>one type of illegal sentence which this Court has consistently held should be corrected under Rule 4-345(a)</u>. Where the trial court imposes a sentence or other sanction upon a criminal defendant, and <u>where no sentence or sanction should have been imposed, the criminal defendant is entitled to relief under Rule 4-345(a)</u>.

(Emphasis supplied.) *See also* <u>Ridgeway v. State</u>, 369 Md. 165, 797 A.2d 1287 (2002) ("A court cannot punish a defendant for a crime for which he or she has been acquitted."); <u>Johnson v. State</u>, 427 Md. 356, 47 A.3d 1002 (2012) (A sentence for assault with intent to murder should never have been imposed where the defendant had never been charged with assault with intent to murder.); <u>State v. Garnett</u>, 172 Md. App. 558, 559, 916 A.2d 393 (2007) ("A sentence of restitution cannot be imposed on a defendant who has been found not criminally responsible by reason of insanity.").

The concept was well summed up by Judge Wilner in <u>Chaney v. State</u>, 397 Md. 460, 466, 918 A.2d 506 (2007):

> <u>We have consistently defined this category of "illegal sentence" as limited to those situations in which the illegality inheres in the sentence itself</u>; *i.e.*, <u>there either has been no conviction</u> warranting any sentence for the particular offense <u>or the sentence is not a permitted one</u> for the conviction upon which it was imposed and, for either reason, is intrinsically and substantively unlawful.

(Emphasis supplied.)

With this preliminary reconnoitering of inherently illegal sentencing behind us, let us now proceed to search the present case to see if there was, indeed, an inherently illegal sentence within the special contemplation of Rule 4-345(a). What was the nature of the allegedly illegal sentence that the appellant claims needed correcting in this case?

## Varieties Of Inconsistent Verdicts

"[I]nconsistency between verdicts is by no means a simple or one-dimensional problem. It is a collection of very different problems." Travis v. State, 218 Md. App. at 436. As our analysis proceeds, it is as important to take careful notice of what this case is not about as it is to note what it is about. Inconsistency in verdicts is a vast subject, most of which is not remotely pertinent to the appeal before us.[4] There is a critical difference between how the law handles inconsistent verdicts in a civil case and in a criminal case. Our concern here is only with an inconsistency in verdicts in a criminal case. There is also a critical difference between inconsistent verdicts in a bench trial and in a jury trial. Our concern here is exclusively with inconsistent verdicts in a jury trial and not with inconsistent verdicts by a judge alone in a bench trial.[5] There is also a critical difference, even in criminal jury trials, between two inconsistent convictions and between a conviction and an inconsistent acquittal. Our only concern in this case is between a conviction and an inconsistent acquittal. There is finally, even in jury trials in criminal cases, a critical

---

[4]    See Eric L. Muller, "The Hobgoblin of Little Minds? Our Foolish law of Inconsistent Verdicts," 111 Harv. L. Rev., 771 (1998); Steven T. Wax, "Inconsistent and Repugnant Verdicts In Criminal Trials," 24 N. Y. L. Sch. Rev. 713 (1979); Ashlee Smith, Comment, "Vice-A-Verdict: Legally Inconsistent Jury Verdicts Should Not Stand In Maryland," 35 U. Balt. L. Rev. 395 (2003).

[5]    There is also occasionally an interesting hybrid trial in which a verdict as to one issue in the trial is rendered by the judge and in which a verdict as to some other aspect of the trial is rendered by the jury. The law as to inconsistency may be of some attenuated pertinence. It should, in any event be handled with extreme sensitivity. See Galloway v. State, 371 Md. 379, 809 A.2d. 653 (2002).

difference between actual legal inconsistencies and less virulent inconsistencies that are only factual or logical. Our concern in this case is only with actual legal inconsistencies.[6]

Our focus in this case is narrowly and scrupulously on the inconsistency between a conviction and an acquittal rendered by a jury in a criminal case that is an actual legal inconsistency and not merely a factual or logical inconsistency. Similar factual situations or beguiling verbal phrases cherry-picked by counsel out of the other categories of inconsistency cases are simply snares and false lures to be meticulously avoided.[7]

## Legal Inconsistency Versus Factual Inconsistency

This case is a textbook example of how intricate a question the difference between a factual inconsistency and a legal inconsistency can be. It is sometimes a very easy question but at other times a very difficult one. The gap between the two types of inconsistency is sometimes self-evidently obvious "from way down the canyon." Sometimes, however, the gap is so infinitesimal as to suggest identity between the inconsistencies. The intent-to-kill, highly pertinent in this case as the mens rea of murder, is of a dual nature and can be a factor in either type of inconsistency. The presence of an

---

[6]   In Travis v. State, 218 Md. App. at 450, this Court continued:

   The difficulty is that although the respective heartlands can be clearly distinguished from each other, the borderline between legal inconsistency and factual inconsistency is often a blurred boundary.

[7]   In Travis v. State, 218 Md. App. at 464, this Court continued:

   Our analysis would be a lot cleaner, therefore, if we could carefully differentiate between the different types of inconsistency and refrain from trying to squeeze dissimilar problems under a single umbrella. Too many cases are cited that are not pertinent, and we spend too much time distinguishing.

8

intent to kill may be a finding of fact, contributing importantly to the jury's decision-making process. The intent to kill, on the other hand, may also be a constituent legal element of a crime, its presence or absence arising out of the jury's decision.

Whether on a given occasion the intent to kill is a vitally important piece of evidence contributing to the jury's verdict, on the one hand, or is a legal element of the crime determined by the jury's verdict, on the other hand, will determine which type of verdict inconsistency is involved. Is the intent to kill evidence going into the jury or an element of the crime whose presence or absence is being announced coming out of the jury? In this case, the intent to kill was an element of the crime of murder, an element in this case found not to have existed by the jury's verdict of not guilty of second-degree murder. In this case, therefore, the variety of verdict inconsistency was legal inconsistency rather than factual inconsistency. All attendant procedures having been satisfied (see Givens v. State infra), the trial judge should not have received the guilty verdict. Absent that verdict, there would have been nothing on which the appellant should have been sentenced and any sentence for a non-existent conviction, therefore, would have been quintessentially illegal per se. The sentence now before us, therefore, would have been inherently illegal within the contemplation of Rule 4-345(a).

**A Sticky Wicket:**
**Verdict Inconsistencies And Inherent Illegalities**

Thus far, the inconsistency in the verdicts before us in this case would qualify for further examination pursuant to Rule 4-345(a) as possibly being of the type of illegal sentence that may be corrected by the court at any time. The verdicts were rendered in a

9

criminal case, not in a civil case. They were rendered in a jury trial, not a bench trial. The inconsistency was between a conviction and an acquittal, not between two convictions. The inconsistency, moreover, was a legal inconsistency, and not merely an evidentiary or logical inconsistency.

This last qualification for justiciability was satisfied because the inconsistency was not with respect to the evidence or the facts of the case, but was an inconsistency with respect to an actual legal element of the crime of murder, to wit, the murderous mens rea of an intent to kill. Of the four possible types or varieties of murder (depending on the particular mens rea involved), the type of murder before us in this case is "intent-to-kill" murder. Glenn v. State, 68 Md. App. 379, 384-85, 511 A.2d 1110, cert. denied, 307 Md. 599, 516 A.2d 569 (1986); Oates v. State, 97 Md. App. 180, 185-86, 627 A.2d 555 (1993). The mens rea of an intent to kill is per se the common law malice that raises an act of homicide to the felony of murder. In this case, the crime of first-degree murder contained as an indispensable legal element the mens rea of an intent to kill. The fact that it was premeditated was simply the aggravating factor that raised the degree of the crime from the second degree up to the first degree. The charge of second-degree murder also included, as one of two alternative mentes reae, the mens rea of an intent to kill. The alternative mens rea of an intent to inflict grievous bodily harm, which alternatively could have supported a conviction for second-degree murder, is irrelevant for present purposes. The jury said that neither mens rea existed.

The legal inconsistency in this case, therefore, was with respect to a legal element of the crime of murder itself. The verdict of guilty of first-degree murder asserted that the

10

appellant had the <u>mens rea</u> of an intent to kill. The verdict of not guilty of second-degree murder asserted that the appellant did not have the intent to kill (he didn't have the alternative <u>mens rea</u> either but that is irrelevant). He could not simultaneously have had the intent to kill but not have had the intent to kill. That legal inconsistency, absent waiver problems, would have meant that the verdict of guilty should not have been received. Without a verdict of guilty, there would have been nothing on which to pass sentence. Such a sentence, therefore, would have been illegal <u>per se</u>. As a legal inconsistency rather than a factual inconsistency, therefore, the claim is thus far at least ripe for further consideration. To wit, it is justiciable.

### <u>Price v. State</u>: A 180° Change of Course

The vintage of this principle that inconsistent jury verdicts are not permitted in Maryland is, however, a matter of dispositive sensitivity in and of its own right. In this Rule 4-345(a) case, the very heart of the appellant's claim is that his sentence to life imprisonment without the possibility of parole for the first-degree murder of G'Angela Johnson was illegal and that that illegality is inherent in the very sentence itself, thus calling for correction by the court even decades after it was originally imposed.

The syllogism around which the appellant constructs his argument in that regard may collapse, however, with the very statement of its major premise. That major premise is that any sentence on a conviction after the trial judge has erroneously accepted inconsistent jury verdicts with respect to that charge is <u>ipso facto</u> illegal within the contemplation of Rule 4-345(a). If, however, that major premise should prove to be untrue,

11

the remainder of the syllogism cannot validly follow. Our job on this appeal, <u>inter alia</u>, will be to assess the truth of that major premise. If that major premise be untrue, the syllogism implodes. The truth of this major premise, moreover, is not only a question of What?, but also a question of When?

What then is the basis for the appellant's claim that the inconsistency between the jury's conviction of him for first-degree murder and its acquittal of him for second-degree murder was somehow illegal under the law of Maryland? No act of the General Assembly ever made it so. Nor did it arrive at St. Clements's Island as part of the unseen cargo of the Ark and the Dove, the English common law. Whence then this core proposition of the case before us? Not only Whence? but When?

The appellant expends but scant attention to this question of his core contention's origins. He does, in little more than a passing comment, cite <u>Price v. State</u>, 405 Md. 10, 18, 949 A.2d 619 (2008) for the proposition that "legally inconsistent verdicts are impermissible in criminal cases." Otherwise the appellant, in his primary appellate brief, says absolutely nothing about the origins of that proposition on which his entire thesis completely depends.

### <u>Heinze v. State</u>:
### "A False Light On The Shore"

In reply brief, the appellant seems to realize for the first time that he may have a problem with a parvenu precedential lineage for his core argument that traces back only to 2008, if it, indeed, depends on <u>Price v. State</u> for its age. Without so much as mentioning <u>Price</u>, the appellant then boldly proclaims in a subheading, "<u>Legally inconsistent verdicts</u>

12

have been illegal for at least 75 years." His reply brief is nothing less than his appropriation of H.G. Wells' Time Machine, and he has set the dial for 1945:

> In Heinze v. State, 184 Md. 613 (1945), the Court of Appeals both acknowledged that legally inconsistent verdicts are illegal and that the court has an affirmative duty to correct them, stating: "It is a generally accepted rule that if the jury should return a verdict which is defective in form or substance, it should not be accepted by the trial judge." *Id.* at 617.

(Emphasis supplied.) That is a classic example of cherry-picking an unquestionably beguiling sentence completely out of context. The reply brief then sought to bring Heinze v. State more up to date:

> Not only has Heinze remained good law, it was cited by the Court of Special Appeals in Givens v. State, 449 Md. 433 (2016), as an example of the well-settled legal precedent that legally inconsistent verdicts in criminal proceedings are unlawful. *See id.* at 448.

As we have explained at some length in cataloguing the varieties of verdict inconsistencies, one may not misapply the law controlling one variety of inconsistent verdicts to a case involving another distinct variety or cherry-pick language from one variety and apply it to another. As this Court warned in Travis v. State, 218 Md. App. 410, 439, 98 A.3d 281 (2014), "Caution should be employed, therefore, not to draw glib or inept analogies between phenomena that are not analogous." As we had earlier pointed out in Tate v. State, 176 Md. App. 365, 384-85, 933 A.2d 447 (2007) ("Tate I"):

> Statements made in the context of inconsistent conviction cases may have no applicability at all in the very different world of an inconsistency between a jury's conviction and a jury's acquittal. Pronouncements quite correctly made in the first context can be treacherous if uncritically misapplied in the second. Such a doctrinal transplant does not always take.

(Emphasis supplied.)

13

The <u>Heinze v. State</u> opinion, and the language quoted by the appellant, involved an inconsistency between two verdicts of guilty. (One could not at that time, e.g., be guilty of both larceny and the receiving of stolen goods.) Ours, on the other hand, is a case involving an inconsistency between a conviction and an acquittal.[8] <u>Heinze v. State</u>, therefore, is simply one of Longfellow's "false lights on the shore,"[9] which should be vigilantly avoided. In a word, we are unbeguiled.

## The Caselaw Pre-<u>Price</u>:
## Inconsistent Verdicts By A Jury Were Tolerated

If not <u>Heinze v. State</u> in 1945, what then is the starting point for the non-toleration principle on which the appellant's thesis completely depends? The age of this principle is pivotal in this case. Because, in oral argument, the appellant adamantly maintained that the birth of the principle goes back before the filing of <u>Price v. State</u> in 2008, it behooves us to examine every scrap of pertinent caselaw – pre-<u>Price</u>, <u>Price</u>, and post-<u>Price</u> – with granular meticulosity.

The general toleration of inconsistent jury verdicts in criminal cases, as opposed to our present non-toleration, traces back at least to 1925. In <u>Travis v. State</u>, 218 Md. App. 410, 443, 98 A.3d 281 (2014) we summarized that early history:

> <u>The entire subject of inconsistent verdicts first achieved national prominence in 1925</u> as federal courts, soon followed by state courts, carved out a massive exception to the former prohibition for an inconsistency between a conviction and an acquittal

---

[8]     This Court analyzed <u>Heinze v. State</u> at significant length in <u>Travis v. State</u>, 218 Md. App. 410, 438-40, 98 A.3d 281 (2014).

[9]     Henry Wadsworth Longfellow, "O Ship of State."

both rendered by a jury. <u>Instead of being strictly forbidden, inconsistency at the hands of a jury became almost universally tolerated.</u>

(Emphasis supplied.)

The pioneering opinion for the toleration of inconsistent verdicts had been that of Judge Learned Hand[10] for the United States Court of Appeals for the Second Circuit in <u>Steckler v. United State</u>, 7 F.2d 59 (2d. Cir. 1925). The Supreme Court followed the lead of Judge Hand with the opinion of Justice Oliver Wendell Holmes in <u>Dunn v. United States,</u> 284 U.S. 390, 52 S.Ct. 189, 76 L.Ed. 356 (1932). Lest any wonder whether <u>Dunn v. United States</u> has now somehow been supplanted, the 1984 opinion for a unanimous Supreme Court by Chief Justice Rehnquist in <u>United States v. Powell</u>, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 reassures us that it has not. *See also* the widely acclaimed opinion of Judge Henry Friendly in <u>United States v. Maybury</u>, 274 F.2d 899 (2d. Cir. 1960). Maryland became a part of this national tide at least as early as 1953, joining 37 other states in tolerating inconsistent verdicts.

What then are the Maryland origins of the legal proposition around which the appellant's case revolves? Those origins are incontrovertibly rooted in June of 2008. They are rooted in <u>Price v. State</u>. <u>Price</u> expressly and affirmatively changed the law in Maryland. At the outset of the opinion, 405 Md. at 18, <u>Price</u> pointed out that the Maryland law with respect to inconsistent verdicts is governed by neither statute nor rules of court. The Maryland law with respect to the various forms of verdict inconsistency is exclusively a product of Maryland's interpretation of the common law:

---

[10]     Referred to by many judges and legal scholars in those days as the "tenth justice."

15

In Maryland, the principles concerning inconsistent verdicts have judicially developed over time as part of this State's common law. Unlike several other jurisdictions, there are no Maryland statutes or promulgated procedural rules which relate to inconsistent verdicts generally or relate to specific types of inconsistent verdicts.[11]

(Emphasis supplied.)

Judge Eldridge's opinion in Price squarely acknowledged that for at least 55 years, numerous opinions of the Court of Appeals had consistently held that in jury trials in criminal cases, an inconsistency between an acquittal on one charge and a conviction on another would not be interfered with by the courts and would not mandate the reversal of the conviction. The appellant's present argument would have had no footing then.

In Leet v. State, 203 Md. 285, 293, 100 A.2d 289 (1953), Chief Judge Sobeloff quoted with approval from both Dunn v. United States and Steckler v. United States in holding for the Court of Appeals:

While it is true that a finding of guilt on two inconsistent counts will be declared invalid in Maryland, Heinze v. State, it does not follow that a conviction on one count may not stand because of an inconsistent acquittal on another count.

(Emphasis supplied.) *See also* Williams v. State, 204 Md. 55, 64, 102 A.2d 714 (1954) ("[A] conviction on one count may stand even in the face of an inconsistent acquittal on another count."); Ledbetter v. State, 224 Md. 271, 273-74, 167 A.2d 596 (1961); Johnson v. State, 238 Md. 528, 540-46, 209 A.2d 765 (1965); Ford v. State, 274 Md. 546, 552-53, 337 A.2d 81 (1975) ("Therefore, based on this near unanimous authority, it is clear that the

---

[11]     Judge Eldridge's opinion, 405 Md. at 23, set out the lawful authority of the Court of Appeals to change, if change seemed called for, the common law of Maryland. The sole purpose of this analysis, indeed its expressed purpose, was to justify the change in inconsistent verdict law that Price was therein announcing.

mere assertion that the petitioner's conviction should be reversed because of the jury's verdicts, pertaining to this multicount indictment, of guilty on one count and not guilty on the other counts, were inconsistent, cannot be embraced by this Court as sufficient reason to vitiate Ford's conviction."); Mack v. State, 300 Md. 583, 601, 479 A.2d 1344 (1984) (Trial court's denial of relief "was consistent with this Court's…holdings that inconsistent verdicts can stand."); Shell v. State, 307 Md. 46, 54, 512 A.2d 358 (1986) ("[C]onvictions based on inconsistent jury verdicts are tolerated."); Wright v. State, 307 Md. 552, 576, 515 A.2d 1157 (1986) ("[I]nconsistent verdicts by a jury are normally tolerated."); State v. Williams, 397 Md. 172, 189, 916 A.2d 294 (2007) ("It has been the position of this Court that inconsistent verdicts in jury trials are permissible in criminal cases."). The Court of Special Appeals was in full accord. *See also* Stuckey v. State, 141 Md. App. 143, 157, 784 A.2d 652 (2001), cert. denied, 368 Md. 241, 392 A.2d 1178 (2002); Hudson v. State, 152 Md. App. 488, 515, 832 A.2d 834 (2003) ("Consistency has never been a requisite attribute of a jury verdict. Continuing the common law tradition, inconsistent verdicts in a jury trial are generally tolerated under Maryland law."); Price v. State, 172 Md. App. 363, 388-90, 915 A.2d 432 (2007) ("[I]nconsistent verdicts in a jury trial are generally tolerated under Maryland law.").[12]

### The Caselaw Post-Price:
### Price Changed The Law

---

[12]    Most of the cases cited above were cited by Price, 405 Md. at 18-19, as reflective of the state of the law on inconsistent jury verdicts prevailing prior to the change that Price was in the act of making.

Although the appellant adamantly denies the pivotal role played by Price, the post-Price caselaw has consistently attributed a 180° turn in the Maryland common law on inconsistent jury verdicts to the Price decision in 2008. In the immediate wake of Price, this Court in Tate v. State, 182 Md. App. 114, 117, 957 A.2d 640 (2008) (Tate II), unequivocally noted the diametric change that Price had effected:

> In Price v. State, the Court of Appeals expressly changed the common law of Maryland, which had in numerous cases over the course of 55 years held that, in jury trials in criminal cases, an apparent logical inconsistency between an acquittal on one charge and a conviction on another will not be interfered with by the courts and will not mandate the reversal of the conviction.

(Emphasis supplied.)

In Teixeira v. State, 213 Md. App. 664, 673, 75 A.3d 371 (2013), Judge Thieme wrote for the Court:

> The Court in Price rewrote Maryland law on inconsistent verdicts, turning the tolerance afforded by Maryland courts for such jury choices on its head.

(Emphasis supplied.) *And see* Travis v. State, 218 Md. App. 410, 447, 98 A.3d 281 (2014) ("For Marylanders, a sea change occurred in 2008.").

In Savage v. State, 226 Md. App. 166, 172, 127 A.3d 576 (2015), Judge Raker, in passing, acknowledged the change made by Price:

> Maryland has long held that legally inconsistent verdicts of guilt cannot stand. In Price v. State, 405 Md. 10, 949 A.2d 619 (2008), the Court of Appeals stated as follows…

(Emphasis supplied.)

Judge Graeff wrote to a similar effect in Ndunguru v. State, 233 Md. App. 630, 639, 168 A.3d 1003 (2017):

18

Until relatively recently, <u>inconsistent verdicts of conviction and acquittal by a jury in a criminal case were permitted</u> because the inconsistency could be the result of lenity. <u>In 2008, however, the Court of Appeals held that inconsistent verdicts would no longer be permitted</u> in Maryland.

The Court of Appeals has consistently followed suit. In <u>McNeal v. State</u>, 426 Md. 455, 458, 44 A.3d 982 (2012), Judge Harrell (whose concurring opinion in <u>Price</u> has become our new prevailing law) spoke of the change:

> This case beckons us to examine our opinion <u>in Price v. State</u>, 405 Md. 10, 949 A.2d 619 (2008), in which <u>we broke with the majority of jurisdictions nationwide and our own jurisprudence to conclude clearly that legally inconsistent jury verdicts in criminal cases were prohibited henceforth in Maryland</u>.

(Emphasis supplied.)

Judge Watts spoke for the Court of Appeals in <u>Givens v. State</u>, 449 Md. 433, 436, 144 A.3d 717 (2016):

> Factually and legally inconsistent verdicts have vexed litigants and been the subject of Maryland appellate opinions in both civil cases and criminal cases for decades. One such case of significant impact is <u>Price v. State</u>, 405 Md. 10, 29, 949 A.2d 619, 630 (2008), in which this Court held that guilty verdicts cannot be legally inconsistent with not-guilty verdicts in the case of a trial by jury.

Notwithstanding, then, the insistence of defense counsel at oral argument that the variety of error on which the defense has built its case traces back not merely to <u>Price</u> in 2008 but all the way to <u>Heinze v. State</u> in 1945, the unrelenting drumbeat of caselaw has indisputably announced that this variety of error first became a part of the law of Maryland with the decision of the Court of Appeals in <u>Price v. State</u>, filed on June 9, 2008. Maryland joined Alaska and Florida in a distinct minority position on this issue. Notwithstanding the appellant's protestations to the contrary, it is indisputable that with respect to inconsistent

19

jury verdicts in a criminal case, a seismic shift occurred on June 9, 2008. Before that day, inconsistent jury verdicts were tolerated. After that day, they were not.

## Time Is Of The Essence

If what became error the day after would not have been error the day before, where exactly did the day of the appellant's sentencing fall on such a dispositive calendar? The obvious question now becomes that of whether the appellant here enjoys the benefit of the change in the law wrought by Price. A look at the calendar reveals that he most assuredly does not. As we have noted, the Price opinion was filed on June 9, 2008. It expressly applied, at least where the issue was preserved, to all others whose cases were still on direct appeal as of that date. Beyond that, Price applied only prospectively, not retroactively. Judge Eldridge's opinion expressly announced:

> Accordingly, with regard to the instant case, similarly situated cases on direct appeal where the issue was preserved, and verdicts in criminal trials rendered after the date of our opinion in this case, inconsistent verdicts shall no longer be allowed.

(Emphasis supplied.)

In her Memorandum Opinion and Order of July 20, 2020, denying the Rule 4-345(a) Motion, Judge White ruled:

> Legally inconsistent jury verdicts have been impermissible in Maryland since the Price case was decided in 2008 and signaled a sea change in the law. It had long been the position of the Court of Appeals of Maryland that "inconsistent verdicts in jury trials are permissible in criminal cases. Price, 405 Md. at 18 (citing State v. Williams, 397 Md. 172, 189 (2007); Wright v. State, 307 Md. 552, 576 (1986); Shell v. State, 307 Md. 46, 54 (1986)). Indeed, because Petitioner's trial occurred eleven years before Price was decided, Judge McCurdy addressed the permissibility of the inconsistent verdicts…Judge McCurdy's explanation and decision in 1997 to accept the jury's legally inconsistent verdicts was correct, and this Court will not disturb that decision. The Court in Price only intended that its ruling be applied prospectively.

20

(Emphasis supplied.)

In her footnote 10, Judge White also noted, "Nevertheless, the inconsistency does not entitle Petitioner to relief under Md. Rule 4-345(a) because 1) <u>the Price decision does not apply retroactively</u>." (Emphasis supplied.)

We hereby affirm Judge White's ruling as to non-retroactivity. Self-evidently, the appellant here did not enjoy the change in Maryland law announced on June 9, 2008. The ostensibly inconsistent jury verdicts rendered in the appellant's case were delivered, following a nine-day trial, on October 3, 1997. The appellant was sentenced by Judge Joseph McCurdy on February 5, 1998. The appellant appealed to this Court and our unpublished decision, affirming his conviction, was filed on December 7, 1998. The appellant's request for a Writ of Certiorari was denied by the Court of Appeals on March 12, 1999. The appellant's case was already ancient history when <u>Price v. State</u> was filed.

With respect to the appellant's first contention, therefore, the appellant's sentence was not retroactively covered by the <u>Price</u> holding on which it totally depends. Without erroneous inconsistent verdicts in 1997, there was, in turn, no inherently illegal sentence on February 5, 1998, now subject to correction by Rule 4-345(a).

## An Alternative Holding:
## The Road To <u>Givens</u>

Even if, purely <u>arguendo</u>, we were to assume that the applicability of <u>Price</u> were to be extended back ten years before its date of birth so as to embrace the appellant's 1998 sentence, the appellant could still not prevail even under the rule of <u>Price</u>. An allegedly illegal sentence within the contemplation of Rule 4-345(a) cannot be established on the

basis of the majority opinion in <u>Price</u> in and of itself. It would have to be established not only on the basis of <u>Price</u> itself but on the significantly fuller exposition of <u>Givens v. State</u>, 449 Md. 433, 144 A.3d, 712 (2016). To understand this, we must revisit <u>Price</u> and the immediate sequelae of <u>Price</u>.

In <u>Price</u>, Judge Harrell filed a concurring opinion. It was joined by Judge Battaglia and, in critical part, by Judge Wilner. Judge Harrell, 405 Md. at 40, explained the need for some clarifying guidelines:

> Because of the "sea change" announced by the Majority's opinion, <u>some prospective direction is necessary and desirable to highlight the procedure required in order for a defendant to preserve for appellate review a challenge to a legally inconsistent verdict</u>.

(Emphasis supplied.)

The concurrence explained that frequently it is the defendant who is the beneficiary of the jury's inconsistent verdicts and that the defendant should be allowed to enjoy the option of accepting the jury's boon. What the defendant may not do, however, is to have his cake and eat it too. The concurrence explained:

> The jury may render a legally inconsistent verdict to show lenity to the defendant. The defendant should not be foreclosed from accepting the jury's lenity as a result of the holding of the Majority opinion. Nevertheless, <u>we should not permit the defendant to accept the jury's lenity in the trial court, only to seek a windfall reversal on appeal by arguing that the jury's verdicts are inconsistent. Accordingly, a defendant must note his or her objection to allegedly inconsistent verdicts prior to the verdicts becoming final and the discharge of the jury</u>. Otherwise, the claim is waived. If a defendant claims that a verdict is inconsistent to the point of being self-destructive, <u>he must present that claim to the circuit court before the jury is discharged; if he does not, he waives the claim</u>.

405 Md. at 40. (Emphasis supplied.)

In the Supreme Court case of <u>United States v. Powell</u>, 469 U.S. 57, 105 S.Ct. 471, 83 L.Ed.2d 461 (1984), a decision that was completely in line with Judge Harrell's concurring opinion in <u>Price</u>, Chief Justice Rehnquist had pointed out that the jury's inconsistent verdicts frequently present the court with the quandary of "Whose ox has been gored?"

> Inconsistent verdicts therefore present a situation where "<u>error,</u>" in the sense that the jury has not followed the court's instructions, <u>most certainly has occurred, but it is unclear whose ox has been gored</u>. Given this uncertainty, and the fact that the Government is precluded from challenging the acquittal, <u>it is hardly satisfactory to allow the defendant to receive a new trial on the conviction as a matter of course</u>.

469 U.S. at 65. (Emphasis supplied.)[13]

---

[13] Why would a jury ever convict a defendant of a crime while, in effect, simultaneously acquitting him of a lesser version of the same crime? Actually, it would not do so, although strong surface appearances might make it appear that it had. To help place the elusive phenomenon of inconsistent jury verdicts in a more understandable perspective, this Court in <u>Travis v. State</u>, 218 Md. App. 410, 436, 98 A.3d 281 (2014), explained some of the well-meaning and innocuous reasons why a jury might appear to have rendered an inconsistent verdict when, in truth, it had no intention of doing so:

> When the State unexpectedly loses a hard earned victory at the eleventh hour, <u>the most wasteful and the most unnecessary cause is that of inconsistency between the verdicts. In the flush of apparent success at the end of a trial, it is all too easy to allow impatience and untidiness to compromise the mopping up operation</u>. Although lesser charges may seem to be little more than superfluous clutter, every "i" must carefully be dotted and every "t" must carefully be crossed before the victory celebration is permitted to begin. <u>Following a conviction for a greater inclusive offense, e.g., not guilty verdicts should never be rendered on lesser included offenses simply to clear the deck</u>. If, as Emerson tells us, "a foolish consistency is the hobgoblin of little minds," a careless inconsistency is the hobgoblin of impatient minds.

(Emphasis supplied.)

23

The obvious cure for inconsistent verdicts would be to send the jury back to clarify the verdicts, but that might not be the wish of the defendant. In <u>Tate II</u>, 182 Md. App. at 134, this Court explained:

> Given a set of inconsistent verdicts, the defendant is at a distinct tactical advantage. <u>The obvious cure for an inconsistency in verdicts would be to send the jury back to resolve the inconsistency</u>: "Ladies and gentlemen of the jury, you can't have it both ways. Give us two acquittals or give us two convictions." The problem, of course, is that <u>few defendants, enjoying the quite unexpected boon of an inconsistent acquittal, are willing to "roll the dice, double or nothing."</u> Consistency for its own sake does not mean that much to them. <u>They are prone to complain about the lack of consistency after it is no longer available, but are far from enthusiastic about pursuing consistency while it is still available</u>.

(Emphasis supplied.)

In his concurrence, Judge Harrell had explained why a defendant might, indeed, prefer an inconsistent verdict to a clarification:

> <u>A defendant may be wise to accept the inconsistent conviction and accompanying sentence, rather than look a gift horse in the mouth</u>. If the defendant objects to the inconsistent verdicts, the jury, given a second chance, may choose to remedy the error in a manner not in the defendant's favor.

405 Md. at 40, n. 9. (Emphasis supplied.)

Judge Harrell's concurrence concluded that before the jury had been dismissed from the trial, the defendant might object to the receipt of the inconsistent verdicts and ask that the jury be advised to resolve the inconsistency. That option, however, belongs to the defendant alone and is not available to either the prosecution or to the trial judge <u>sua sponte</u>.

---

At the end of a complicated trial, the ostensibly inconsistent verdict is frequently nothing more than a misbegotten effort on the part of the jury to help tidy up some of the clutter. It is more prudent, however, to leave the clutter alone.

24

In <u>Tate v. State (Tate II)</u>, 182 Md. App. at 135, this Court described the limited procedural

option:

> When inconsistent verdicts are rendered, <u>the judge may not, sua sponte, send the</u>
> <u>jury back to resolve the inconsistency</u>, because it is <u>the defendant</u> who <u>is entitled</u>,
> should he so wish, <u>to accept the benefit of the inconsistent acquittal</u>. By the same
> token, <u>the prosecutor may not ask to have the jury sent back to resolve the</u>
> <u>inconsistency</u>, because it is the defendant, once again, who is entitled, should he so
> wish, to accept the benefit of the inconsistent acquittal.

(Emphasis supplied.)

In the wake of <u>Price v. State</u> and with a major persuasive push by <u>Tate v. State (Tate</u>

<u>II)</u> (2008); <u>Travis v. State</u>, 218 Md. App. at 448 ("In short order, it became clear that the

major significance of the <u>Price</u> decision lay in the concurring opinion of Judge Harrell.");

and <u>McNeal v. State</u>, 426 Md. 455, 44 A.3d 982 (2012)[14], the concurrence of Judge Harrell

was declared to be the binding law of Maryland in <u>Givens v. State</u>, 449 Md. 433, 144 A.3d

717 (2016). <u>Givens</u>, 449 Md. at 486, was emphatically clear:

> In sum, we now join the Court of Special Appeals, adopt Part C of Judge Harrell's
> concurring opinion in <u>Price</u>, and hold that, <u>to preserve for review any issue as to</u>
> <u>allegedly inconsistent verdicts, a defendant in a criminal trial by jury must object to</u>

---

[14] Because the case was decided on other grounds, <u>McNeal</u>'s discussion of the concurring opinion in <u>Price</u> was only dicta. At 426 Md. 466, that dicta nonetheless recommended:

> <u>Only a defendant, not the State, may object to an inconsistent verdict</u>. The objection must be made prior to verdict finality and discharge of the jury (as McNeal did in the present case), thus preventing the defendant from accepting the inconsistent verdict and seeking thereafter a windfall reversal on appeal. <u>Upon proper and timely</u> <u>objection by the defendant, the trial court must instruct the jury to resume</u> <u>deliberations and resolve the inconsistency</u> either by returning verdict in the defendant's favor, convicting on the implicated counts, or deadlocking on a charge so that no inconsistent finding result.

(Emphasis supplied.)

> the allegedly inconsistent verdicts before the verdicts are final and the trial court discharges the jury.

(Emphasis supplied.)

## The <u>Price-Givens</u> Singularity

In terms of mandatory procedure, the <u>Price-Givens</u> combination is now an indivisible monolith. Even the apparent eight-year gap between the filing of <u>Price</u> in 2008 and the filing of <u>Givens</u> in 2016 did not provide much of a window for <u>Price</u> to spread its wings. On the very day that <u>Price</u> was filed, Judge Harrell's simultaneously filed concurring opinion precisely foreshadowed what would become the holding of <u>Givens</u>. In <u>Tate v. State</u> (<u>Tate II</u>), filed less than four months after <u>Price</u> was filed, the Court of Special Appeals committed itself to following, as binding law, Judge Harrell's concurring opinion. Subsequent caselaw presaging <u>Givens</u> was relentless. <u>McNeal v. State</u>, 200 Md. App. 510(2011); <u>McNeal v. State</u>, 426 Md. 455 (2012); <u>Teixeira v. State</u>, 213 Md. App. 664 (2013); <u>Travis v. State</u>, 218 Md. App. 410 (2014). <u>Givens</u> in 2016 gave official sanction to this quasi-official embrace of Judge Harrell's concurring opinion in <u>Price</u>.

In retrospect, <u>Price v. State</u> has not been the boon for criminal defendants initially foreboded. The antidote is <u>Givens v. State</u>. With <u>Givens</u> tightly limiting the substantive coverage of <u>Price</u> and with <u>Givens</u> sternly restricting the procedural application of <u>Price</u>, the net impact of the <u>Price</u> majority opinion on criminal practice has been minimal. Today, moreover, a citation to <u>Price</u> without a simultaneous citation to <u>Givens</u> would be deceptively misleading. In essence, the net effect of the <u>Price</u> change in 2008 has been to make inconsistent verdicts in criminal cases at least justiciable, even if the proponent

26

seldom, if ever, ultimately prevails. That is essentially all that it does. For the State, Price has turned out to be more of a speed bump than a road block.

Even if, under our arguendo assumption that the appellant could somehow avail himself of the change in substantive law effected by Price in 2008, the appellant would still have failed to satisfy the mandatory procedural requirements of the Price-Givens combination. Immediately after the verdicts were rendered in this case on October 3, 1997, the total discussion that followed was:

[DEFENSE COUNSEL]: I don't understand.

[PROSECUTION]: It is very understandable.

THE COURT: What's the problem?

[PROSECUTION]: Counsel says he doesn't understand the verdict.

THE COURT: If there is any question to the fact that the jury found the – I assume what counsel is referring to is the fact that the jury found the –

[PROSECUTION]: Murder 2nd

THE COURT: Found the defendant not guilty of murder in the second degree of G'Angela Johnson and that's a very common thing, Mr. Ross. Sometimes the jurors understand that murder in the second degree is a lesser included offense, sometimes they don't and having found the state has proven all the elements of murder in the first degree, they automatically find the defendant guilty of murder in the second degree.

I think there is abundant case law to the effect this is a proper verdict.

[DEFENSE COUNSEL]: I never had one like this before.

27

THE COURT: Again, it is unusual. In the few cases I have had, I have had both results come back. And counsel are equally confused when they find the defendant guilty of murder both first degree and second degree than when they find the defendant guilty of first degree and not guilty of the second degree.

(Emphasis supplied.)

The appellant never objected to the receiving of the verdict by Judge McCurdy. The words, "I have never had one like this before," do not constitute a cognizable objection. The appellant never requested that the jury be sent back to clarify its verdicts. Should the appellant protest that Judge McCurdy should, sua sponte, have sent the jury back to clarify its verdict, the answer is that Ndunguru v. State, 233 Md. App. 630, 642, 168 A.3d 1003 (2017) expressly forbade it:

> [A] trial court may not, in the absence of a request from the defendant, advise a jury that its verdicts are inconsistent and send the jury back to resolve the inconsistency.

(Emphasis supplied.)

Just as the appellant's first contention could not prevail substantively because his case was not covered by Price v. State, neither, therefore, could the arguendo alternative argument prevail because he never complied with the procedural requirements of Givens v. State. Without any error arising out of inconsistent verdicts, therefore, there was no inherently illegal sentence calling for correction by Rule 4-345(a). Substantively, the appellant's case was not covered by the change in the law effected by Price v. State in 2008. Even if, arguendo, it had been covered, however, the appellant failed to satisfy the procedural requirements of Givens v. State. Under either alternative, the first contention fails.

## A Forlorn Contention

28

The appellant's second contention will not detain us long. He contends that back on October 3, 1997, Judge McCurdy committed plain error when he failed, <u>sua sponte</u>, to instruct the jurors that second-degree murder is a lesser included offense of first-degree murder and to alert them that if they truly find that the lesser offense was not committed, they may not convict a defendant for the greater offense. The appellant argues:

> The court's instructions to the jury unduly prejudiced Mr. Pitts for two reasons. First, they did not inform the jury that second-degree murder of the specific intent to kill variety is a lesser-included offense of premeditated first-degree murder. Second, the instructions did not explain to the jury that <u>they must find Mr. Pitts not guilty of the greater-inclu[sive] offense of first-degree premeditated murder if they find him not guilty of the lesser-included offense of second-degree murder</u> of the specific intent to kill variety.

(Emphasis supplied.)

The claim is that the absence of this unrequested instruction failed to alert the jury to avoid inconsistent verdicts and thereby contributed to the error in this case. How do we reject this contention? Like Elizabeth Barrett Browning, "Let [us] count the ways."[15]

## 1. The Lack Of Substantive Merit

The contention lacks substantive merit. It suffers from being entrapped in the same time warp that doomed the appellant's first contention. The appellant argues that telling the jurors that if they acquitted on a lesser included offense they could not inconsistently convict on a greater included offense might have avoided the error that was eventually committed. In this case, however, no such error was eventually committed. The contention's fatal flaw is that 1997 was not yet 2008. Just as the sentence here was imposed

---

[15] Elizabeth Barrett Browning, "*How do I Love Thee?"*, <u>Sonnets From The Portuguese 43</u>.

29

11 years before <u>Price</u> was decided, the jury instructions here were delivered 11 years before <u>Price</u> was decided. The effect of the instruction would have been to alert the jury not to commit non-error. The appellant cites no authority for such a requirement.

This contention challenges us with an intriguing anachronism. The jury instruction now under the microscope of this contention was delivered on October 3, 1997. In fairness to it, it deserves to be judged as a product of its own time and by the legal standards prevailing at such time. The appellant, however, would have us dissect and examine it as if the instruction had been delivered yesterday. "The time is out of joint."[16] He would, in effect, have us evaluate a 1997 jury instruction by a standard that did not even exist until 2008. To do so, of course, would be rankly anachronistic. A more intellectually appropriate proposal would have been to ask this appellate panel to transport itself back to October 4, 1997, there and then to assess, by the prevailing standards of that time, the jury instruction that had been given the day before at the close of the appellant's trial. Our holding, in such a hypothetical case, would have been that that jury instruction at that time and in that place would have been perfectly proper. Accordingly, our holding in 2021 shall simply reaffirm what our holding would have been, if we had been called upon to make it, back in 1997.

## 2. The Lack Of Preservation

The contention lacks preservation for appellate review. Even if, <u>arguendo</u>, such a substantive instruction has been mandatory, the appellant would utterly have failed to preserve the issue for appellate review. To begin with, he never requested such an

---

[16]     Shakespeare, "Hamlet," Act 1, Scene 5.

instruction. By way of follow up, he never objected that no such instruction had been given.

Rule 4-325(e) states clearly:

> No party may assign as error the giving or the failure to give an instruction unless the party objects on the record promptly after the court instructs the jury, stating distinctly the matter to which the party objects and the grounds of the objection.

(Emphasis supplied.) *See* Watts v. State, 457 Md. 419, 428, 179 A.3d 929 (2018). This contention was even less preserved than was the first contention and, with specific reference to this contention, the appellant does not so much as suggest otherwise.

### 3.  The Lack Of Any Persuasive Reason For Noticing "Plain Error"

The contention lacks any extraordinary feature that might make an appellate court wish to extend to the appellant gratuitous ("undue") process. *See* Jeffries v. State, 113 Md. App. 322, 325-26, 688 A.2d 16 (1997). In casually alluding to "plain error" as an available antidote for his non-preservation problem, the appellant ignores the extreme rarity of the notice of "plain error," which is the phenomenon's dominant characteristic. As this Court noted in Morris v. State, 153 Md. App. 480, 507, 837 A.2d 248 (2003), cert. denied 380 Md. 618, 846 A.2d 402 (2004):

> [A]ppellate invocation of the "plain error doctrine" 1) always has been, 2) still is, and 3) will continue to be a rare, rare phenomenon.

We made the same point metaphorically in Garner v. State, 183 Md. App. 122, 152, 960 A.2d 649 (2008), aff'd. 414 Md. 372, 995 A.2d 694 (2010):

> [A] consideration of plain error is like a trip to Angkor Wat or Easter Island. It is not a casual stroll down the block to the drugstore or the 7-11.

The appellant fails to suggest any extraordinary characteristic of the alleged error in this case that might make it a likely candidate for attracting such rare, rare notice. The

31

United States Court of Appeals for the First Circuit referred to one such eye-catching characteristic in United States v. Moran, 393 F.3d 1, 13 (1st. Cir. 2004):

> [P]lain error review tends to afford relief to appellants only for "blockbuster" errors.

(Emphasis supplied.)

The appellant here nominates for "plain error" notice, however, not the primary contention of this appeal but only a very secondary contention. It concerns, moreover, only the failure of a judge sua sponte to give an instruction that was never requested, which failure was never objected to. The appellant fails to persuade us how such a lackluster alleged error, even if error it be, would ever qualify as a "blockbuster" error.

Another reason for taking such rare, rare notice might be where the appellate court is persuaded that a true injustice has been suffered by a possibly innocent defendant. In this case, of course, the appellant continues to serve a completely unchallenged sentence for the cold-blooded first-degree murder of yet a second victim, the sister of the victim in this case. This hardly qualifies as a case of "outraged innocence" crying out for discretionary redress. *See* Austin v. State, 90 Md. App. 254, 269-70, 600 A.2d 1142 (1992).

It is not for the appellant to tell us that we have the authority to notice "plain error" if we should wish to. That is indisputable. It is rather for the appellant to persuade us why we should wish to. The appellant is applying for the special preferment of having his request for **plain error** review singled out of the common herd of routine and undistinguished requests for such review, the overwhelming majority of which will be summarily denied. The appellant proffers, however, no semblance of special significance

32

to justify such preferment. The ordinary becomes the extraordinary only for some compelling reason, but the appellant offers us no compelling reason.

### 4. The Lack Of Any Inherent Illegality In The Sentence

The contention finally lacks any inherent illegality in the sentence itself. It does not even presume to charge any such illegality in the sentence. It may not be overlooked that the express focus of this contention is not even on the sentence of February 5, 1998, which, if inherently illegal, may of course be corrected at any time, but on the jury instruction of October 3, 1997, which, even if it had been notoriously improper, may not be corrected at any time. A Rule 4-345(a) hearing is simply not a belated appeal.

Even if, <u>arguendo</u>, none of the other fatal disqualifications were present, the appellant could still not prevail. Even if an error in the giving of or in the failure to give a jury instruction were properly before us, it would be an error only in the antecedent trial process leading to a verdict. It would not constitute an illegality inherent in the sentence itself. <u>Colvin v. State</u>, 450 Md. 718, 725, 150 A.3d 850 (2016). As we stated at the very outset of this opinion, this is not a direct appeal, not even a belated one. This is a Rule 4-345(a) case. This second contention, however, is not a Rule 4-345(a) contention.[17]

---

[17]    It is perhaps exponentially redundant to point out that the entire contention is in no way properly before us. We are not conducting a <u>de novo</u> hearing on the legality of the appellant's sentence of February 5, 1998. We are not reviewing the appellant's 1997 trial. We are simply reviewing the July 2, 2020 hearing conducted by Judge White on the appellant's November 4, 2018 Motion to Correct an Illegal Sentence. This appeal is limited to that.

    This present contention was never a part of that Rule 4-345(a) hearing. It was not raised in the appellant's Rule 4-345(a) motion. It was not argued in the July 2, 2020 hearing on that motion. It was not decided by Judge White. It is, therefore, not remotely before us

**JUDGMENT AFFIRMED; COSTS TO BE PAID BY APPELLANT.**

on this appeal. We are not reviewing something that the appellant could have made, but did not make, part of his Rule 4-345(a) Motion to Correct an Illegal Sentence.

34

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/0552s20cn.pdf